UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL LAWRENCE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-00820-MEJ<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 71 |

## INTRODUCTION

Plaintiff Emil Lawrence ("Plaintiff") initially represented himself when he filed this 42 U.S.C. § 1983 case in San Francisco Superior Court related to his arrest and transport to a police station on January 2, 2012. After the case was removed to this Court in 2014 and discovery closed in February 2015, the Court appointed volunteer attorneys Fred Fields, David Anderson, and Martin White of Coblentz Patch Duffy & Bass LLP as counsel for Plaintiff. Dkt. No. 55. With the aid of counsel, Plaintiff now seeks to reopen discovery to: (1) depose three officers—Christa Peters, Joshua Enea, and Daniel Bonnel—allegedly responsible for his arrest and transport to the police station; and (2) compel Defendant City and County of San Francisco (the "City") to produce (a) all records from the City's Office of Citizen Complaints ("OCC") and Internal Affairs Division ("IAD") related to complaints against these officers for excessive force or dishonesty, and (b) all documents in these officers' personnel files regarding their mental and physical condition for duty. Jt. Ltr., Dkt. No. 71. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

**BACKGROUND**

Plaintiff filed his initial Complaint in this matter in San Francisco Superior Court on November 8, 2012, alleging "intentional multiple torts" against San Francisco police officers related to his arrest in January 2012. Not. of Rem., Ex. A, Dkt. No. 1-1. On July 22, 2013, he filed a First Amended Complaint which included a claim under 42 U.S.C. § 1983, and on that basis the City removed the case to this Court on February 24, 2014. *Id.* The following factual allegations are taken from Mr. Lawrence's First Amended Complaint.

Plaintiff alleges that, in December 2011, while having lunch at a Panda Express restaurant, he noticed "a black notebook, possibly with a calculator or unknown brand of reader like Kindle, or a Droid, PC, Apple, or some other kind of electronic device, across from me at the table." *Id.* at 17. Plaintiff picked up the device and left the restaurant. *Id.* On January 2, 2012, Plaintiff returned to the Panda Express for lunch, at which point two San Francisco police officers approached him and asked, "Did you take a computer from this store?" *Id.* at 18. At the same time, a woman yelled from the sidewalk, "That is the thief, that is him, get him, my computer, he is on the video stealing it." *Id.* The officers handcuffed Plaintiff, pushed him into a police vehicle, and forced him to sit on his previously-broken wrists. *Id.* The officers transported Plaintiff to the Northern Police Station on Fillmore Street and dragged him out of the vehicle, dropping him on his back while still handcuffed. *Id.* Plaintiff alleges he was shackled for two hours at the police station, with the handcuffs causing his hands to go while. *Id.* Plaintiff was released after signing two citations. *Id.* at 19. As a result of his arrest, Plaintiff alleges multiple claims, including violations of 42 U.S.C. § 1983, false imprisonment, false arrest, negligence, and various California statutory claims.

On May 22, 2014, the Court issued a Case Management Order, establishing a discovery cut-off of February 10, 2015. Dkt. No. 19. As noted above, before July 31, 2015, Plaintiff represented himself pro se. During that time, he propounded requests for production that sought, among other things, his arresting and transporting officers' discipline and fitness for duty records. After the City objected to these records requests, Plaintiff filed several motions outlining their discovery disputes. Dkt. Nos. 23, 33, 39, 41, & 42. The Court denied his motions without

prejudice, directing the parties to meet and confer and submit joint letters per the Court's Discovery Standing Order. Dkt. Nos. 24, 32, 40, & 44. Plaintiff was deposed, but he never noticed or took the officers' depositions. Jt. Ltr. at 1.

On October 20, 2015, after appointment of his present counsel, Plaintiff moved to reopen discovery to: "(1) seek unredacted versions of documents Defendant already produced, arguing they were not properly redacted in the first place; (2) seek documents he contends Defendant improperly withheld from production; and (3) allow him to take the deposition of three witnesses: officers Bonnel, Peters, and Enea." Order re: Discovery Deadline, Dkt. No. 67 (citing Pl.'s Mot. to Change Time, Dkt. No. 66). The Court denied Plaintiff's motion without prejudice and ordered as follows: "Having reviewed Plaintiff's motion, the Court finds good cause may exist to reopen discovery, as it will benefit both the parties' settlement negotiations and, if negotiations are unsuccessful, resolution of this case on the merits." *Id.* The Court ordered the parties to meet and confer in person to explore reopening discovery on mutually beneficial grounds. *Id.*

Since October 20, 2015, the parties' counsel have since met and conferred—through three in-person meetings, over a dozen telephone conferences, and dozens of exchanged e-mails—resolving some discovery issues raised in the Motion, but not others. Jt. Ltr. at 1. Plaintiff now seeks (1) depositions of Officers Peters, Enea, and Bonnel, and (2) production of (a) all OCC and IAD documents related to complaints against these officers for excessive force or dishonesty, and (b) all documents in these officers' personnel files regarding their mental and physical condition for duty. *Id.* On May 6, 2016, the City produced what its counsel has represented comprises all known complaints alleging excessive force investigated by OCC and/or IAD against the officers in the five years prior to the alleged incident. *Id.* However, the City continues to object and refuses to produce many requested documents as well as to produce the officers for deposition. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 16 requires the trial court to enter pretrial scheduling orders which set dates for the completion of discovery, hearings on non-dispositive and dispositive motions, trial, and other matters. Rule 16(b)(4) provides the "scheduling order may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When a party seeks

1    to continue the dates set by the court, it must first show 'good cause' for modification of the order
2    under Rule 16(b). *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).
3    　　　The good cause inquiry primarily considers the diligence of the party seeking amendment.
4    *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). A party demonstrates
5    good cause by establishing that, even with the exercise of due diligence, he or she was unable to
6    meet the scheduling deadlines. *Zivkovic*, 302 F.3d at 1087; *Johnson*, 975 F.2d at 609. Where the
7    moving party has not been diligent, the inquiry ends and the motion should be denied. *Zivkovic*,
8    302 F.3d at 1087; *Johnson*, 975 F.2d at 609 ("Although the existence or degree of prejudice to the
9    party opposing modification might supply additional reasons to deny a motion, the focus of the
10   inquiry is upon the moving party's reasons for seeking modification.").

**DISCUSSION**

12   　　　Plaintiff argues his efforts satisfy Rule 16's good cause standard because "his unsuccessful
13   attempts as a pro se litigant to navigate the local rules and this Court's Standing Order on
14   Discovery do not take away from his good faith, diligent efforts to complete discovery before the
15   deadline." Jt. Ltr. at 2. He notes the Court appointed counsel after the discovery cutoff, and
16   "counsel quickly moved the court to reopen merits discovery for a pro se litigant after assessing
17   the discovery already taken in the case; and, if the City faces any prejudice, it is limited and
18   substantially outweighed by Lawrence's need to take sufficient discovery to adequately prepare
19   for trial (and to participate in settlement efforts)." *Id.* He further argues the information he seeks
20   is relevant because the deposition testimony of the arresting officers (Peters and Enea) and the
21   transporting officer (Bonnel) bears upon his § 1983 claims involving those very officers. *Id.*
22   Finally, he contends records related to any OCC complaints or IAD investigations against these
23   three officers for excessive force or dishonesty, and documents in these officers' personnel files
24   regarding their mental and physical condition for duty are relevant for the same reason. *Id.* at 3.
25   　　　The City argues good cause does not exist to reopen discovery because Plaintiff had the
26   opportunity to take discovery during the nine months discovery was open, and he exercised his
27   right to take discovery by propounding 49 requests for production of documents and seven
28   interrogatories. *Id.* at 4. The City maintains it "has expended considerable resources in

4

1  responding to Plaintiff's discovery, for example by producing over 300 pages of documents[,]" but
2  he "never attempted to take a single deposition prior to the close of discovery.  Over the course of
3  two settlement conferences and several lengthy meet and confer sessions, Plaintiff never expressed
4  a desire to take any of the officers' depositions." *Id.*  The City further argues it has produced all
5  relevant discovery that are not privileged.  *Id.*  Specifically, based on Plaintiff's allegation of
6  excessive force, the City produced all complaints alleging excessive force investigated by OCC
7  and/or IAD against the subject officers in the five years prior to the alleged incident.  *Id.* at 5.  It
8  maintains Plaintiff's new request for "every complaint ever filed against the individual officers
9  during the entirety of their careers" is unreasonable because he fails to make a showing of how
10 such information is relevant, "and because such a position is on its face designed to harass and
11 burden the City with unnecessary discovery."  *Id.*  The City contends the officers have a protected
12 interest in the information contained in these files, and the City has an interest in maintaining the
13 confidentiality of this information, because the files contain highly sensitive, personal information,
14 including financial information.  Finally, with respect to Plaintiff's requests for evaluations of the
15 officers' mental and physical condition for duty, the City argues Plaintiff has shown no
16 compelling reason to violate the protection to which medical and mental health records are
17 entitled.  *Id.*

18 　　　　Having reviewed the parties' positions, the Court is persuaded that Plaintiff's request to
19 reopen discovery is supported by the requisite showing of good cause.  There is no indication that
20 Plaintiff—who until recently has been acting pro se—has been dilatory in conducting discovery.
21 To the contrary, the record shows he has made numerous attempts, albeit largely unsuccessfully,
22 to obtain discovery from the City prior to the appointment of counsel.  *See* Dkt. Nos. 23, 33, 39,
23 41, & 42.  In many circumstances, a pro se litigant's good faith unsuccessful efforts to obtain
24 discovery meet the standard of "good cause."  *See, e.g.*, *Henderson v. Peterson*, 2011 WL 441206,
25 at *2 (N.D. Cal. Feb. 3, 2011) (finding good cause after counsel's appointment where "Plaintiff's
26 pro se status" demonstrated "that he was unable to gain access to evidence and information that he
27 might otherwise have obtained had he been represented by counsel"); *Woodard v. City of Menlo*
28 *Park*, 2012 WL 2119278, at * (N.D. Cal. June 11, 2012) (reopening discovery after appointment

of pro bono counsel). The Court also finds that modifying the deadlines in this case will not cause the City to suffer undue prejudice or impact the orderly and efficient resolution of this case because the Court vacated all pending deadlines at the time it appointed counsel. Dkt. No. 56. As such, reopening discovery for the limited purpose requested by Plaintiff will not delay the trial. Further, while the Court recognizes the City will incur increased litigation costs as a result of granting Plaintiff's request, "any prejudice suffered by Defendant in this regard is substantially outweighed by Plaintiffs need to engage in discovery to adequately prepare for trial." *Woodard*, 2012 WL 2119278, at *2.

However, the Court must also consider whether the requested discovery is relevant. As to Plaintiff's request to take the three officers' depositions, such discovery is clearly relevant as they are his arresting and transport officers. As to their disciplinary records, courts regularly grant plaintiffs in excessive force cases leave to obtain the defendant officers' disciplinary files. *See, e.g.*, *Nehad v. Browder*, 2016 WL 2745411, at *2 (S.D. Cal. May 10, 2016); *Henderson*, 2011 WL 441206, at *2; *Zackery v. Stockton Police Dep't*, 2007 WL 1655634, at *2 (E.D. Cal. June 7, 2007) (noting that in excessive force cases, the officers' "personnel file information has been found to be quite relevant because they may reveal the defendant officers' credibility, motive and patterns of behavior."); *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995) ("Records of complaints against defendant officers relating to their use of excessive force has been found to be relevant to a plaintiff's civil rights claim."). Further, Plaintiff has narrowed the scope of his request to complaints against these officers for excessive force or dishonesty, which is tailored to the claims in this case. *Cf. Nehad*, 2016 WL 2745411, at *2 (finding plaintiffs' request for "any complaints" made against the defendant officer overbroad in scope and requiring plaintiffs to narrow their request "to any complaints made against [the officer] that are similar to the complaint made in this case"). Although the City argues it should not have to produce complaints against the officers "during the entirety of their careers," *see* Jt. Ltr. at 5, it does not articulate why information about the officers' earlier years on the force would not provide insight into their background, and it does not adequately justify why a limitation would be warranted. Accordingly, this objection is overruled. *See Nehad*, 2016 WL 2745411, at *2 ("Even though Browder is a

1  twenty-eight year veteran of the force and thus his personnel records may be extensive,
2  Defendants do not articulate why information about his earlier years on the force would not
3  provide insight into his background.").

4  Finally, regarding Plaintiff's request for the officers' medical records, the Court finds this
5  request overbroad in scope. As an initial matter, Plaintiff does not articulate why these officers'
6  medical records are relevant to his claims, other than a generalized statement that they are relevant
7  to his excessive force claim. Jt. Ltr. at 2. Although courts do permit discovery of such records,
8  their specific relevance must first be established. *See Hutton v. City of Martinez*, 219 F.R.D. 164,
9  166-67 (N.D. Cal. 2003) (ordering an officer's medical records produced in a civil rights case
10 where the records were directly relevant because the plaintiff claimed the officer shot him because
11 his poor physical condition prevented him from chasing the plaintiff on foot); *Nehad*, 2016 WL
12 2745411, at *2 (finding plaintiffs' generalized request for medical records overbroad because they
13 did not contend the officer had any psychological or medical issues that contributed to his
14 behavior, but permitting discovery of the records narrowed to one year preceding the incident
15 based on plaintiff's allegation that the officer was not tested for drugs or alcohol the night of the
16 shooting or thereafter). Thus, balancing Plaintiff's stated interests in the officers' medical and
17 psychological records against the officers' right to privacy in such information, the Court
18 concludes these requests must be narrowed in scope. *Soto*, 162 F.R.D. at 618 (concluding that
19 "only those mental or psychological records which concern the incident at issue, prior episodes of
20 violence, or the officers' propensity for violence of the type alleged in the complaint are
21 relevant."). Discovery is therefore appropriate only as to the incident at issue and prior episodes
22 of violence, or the officers' propensity for violence of the type alleged in Plaintiff's First Amended
23 Complaint. *Id.*

24 The City also argues the officers' medical records are subject to protection under the
25 official information privilege. Jt. Ltr. at 4. Federal law regarding privilege applies to federal
26 question cases. Fed. R. Evid. 501; *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1492 (9th
27 Cir. 1989). Federal common law recognizes a qualified privilege for official information. *Kerr v.*
28 *U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976).

7

Official information protected by this qualified privilege includes government personnel files. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). The official information privilege is subject to the competing interests of the requesting party and is "subject to disclosure especially where protective measures are taken." *Kerr*, 511 F.2d at 198. Courts embrace "*a balancing approach that is moderately pre-weighted in favor of disclosure*." *Kelly v. San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987) (emphasis in original) (ordering disclosure of law enforcement documents subject to a protective order to a plaintiff in a § 1983 action).

The party asserting the official information privilege must invoke it by name and make a substantial threshold showing of privilege. *Id.* at 669. To make such a showing, a "party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter." *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (citing *Kerr*, 511 F.2d at 198). The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality,
>
> (2) a statement that the official has personally reviewed the material in question,
>
> (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer,
>
> (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests,
>
> (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly*, 114 F.R.D. at 670. A "general assertion" that a law enforcement organization's internal investigatory system "'would be harmed by disclosure of the documents is insufficient' to meet the threshold test for invoking the official information privilege." *Soto*, 162 F.R.D. at 614 (quoting *Chism v. Cty. of San Bernardino*, 159 F.R.D. 531, 534-35 (C.D. Cal. 1994)). A "general claim of harm to the 'public interest' is also insufficient to overcome the burden placed on the party seeking to shield material from disclosure." *Id.* (citing *Miller*, 141 F.R.D. at 300-01; *Kelly*,

8

1    114 F.R.D. at 672).  The party resisting discovery "must *specifically* describe how disclosure of
2    the requested documents in that particular case . . . would be harmful."  *Id.* (emphasis in original)
3    (citing *Miller*, 141 F.R.D. at 300-01).
4          Here, the City states it "fulfilled the 'substantial threshold showing' requirement in this
5    case by submitting a declaration by Lt. Christopher Woon." Jt. Ltr. at 5.  However, the parties did
6    not submit the declaration with their joint letter, and it is therefore not clear what governmental or
7    privacy interests Lt. Woon stated would be threatened by disclosure of the material to Plaintiff.
8    Regardless, having engaged in the requisite balancing approach to determine what level of
9    protection should be afforded, the Court finds the City asserts only general assertions of harm, yet
10   fails to demonstrate why disclosing the information sought under a carefully crafted protective
11   order to protect the confidentiality of the information would harm a significant governmental
12   interest.  The Court recognizes the officers' privacy concerns in the information maintained in
13   these files, and those privacy rights are not inconsequential.  However, on balance, such interests
14   do not outweigh Plaintiff's need to discover important information about his claims.  Moreover,
15   the City's arguments regarding privacy can be addressed by an appropriate protective order, and
16   by redacting the officers' sensitive personal and financial information to protect against potential
17   threats to safety.  *Nehad*, 2016 WL 2745411, at *4.

## CONCLUSION

19         In sum, and subject to an appropriate protective order, the Court hereby **GRANTS**
20   Plaintiff's request to reopen discovery for the limited purposes stated herein.  The Court further
21   **GRANTS** Plaintiff's request to compel discovery as follows:
22       1) Plaintiff may take the depositions of Officers Peters, Enea, and Bonnel;
23       2) The City shall produce all OCC and/or IAD documents related to complaints against
24          these officers for excessive force or dishonesty; and
25       3) The City shall produce all documents in these officers' personnel files regarding their
26          mental and physical condition for duty, but only as to (a) the incident at issue and prior
27          episodes of violence, or (b) the officers' propensity for violence of the type alleged in
28          Plaintiff's First Amended Complaint.  The City shall redact the officers' sensitive

personal and financial information, and the parties shall meet and confer to determine whether any changes need to be made to the protective order already in place (Dkt No. 62).

**IT IS SO ORDERED.**

Dated: June 14, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge