UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| EMIL LAWRENCE, | Case No. 14-cv-00820-MEJ |
|---|---|
| Plaintiff, | |
| v. | **ORDER RE: MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND MOTION FOR LEAVE TO SERVE DOE DEFENDANTS** |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. | Dkt. Nos. 79, 80 |

## INTRODUCTION

Plaintiff Emil Lawrence ("Plaintiff") brings this civil rights action relating to his arrest in January 2012. He now seeks leave to (1) file an amended complaint and (2) serve two police officers (the "Officers") as Defendants. Mot. re: Am. Compl., Dkt. No. 79; Mot. to Serv., Dkt. No. 80. Defendant City and County of San Francisco (the "City" or "Defendant") does not oppose Plaintiff's Motion for Leave to Amend (*see* Non-Opposition, Dkt. No. 81), but does oppose his request to serve the Officers (*see* Opp'n, Dkt. No. 82).[1] The Court held a hearing on this matter on September 8, 2016 (Minute Entry, Dkt. No. 84) and ordered supplemental briefing (Suppl. Br. Order, Dkt. No. 85). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Plaintiff's Motions for the reasons set forth below.

## BACKGROUND

Plaintiff was arrested on January 2, 2012 for stealing iPad from a Panda Express restaurant in San Francisco. He alleges San Francisco Police Officers violated his civil rights by using excessive force against him. On February 8, 2012, Plaintiff filed an administrative complaint with the San Francisco Police Department's Office of Citizen Complaints ("OCC") regarding the arrest,

---

[1] The Officers specially appeared in the action to oppose Plaintiff's request to serve them. *See* Opp'n at 1 n.1.

and on March 28, 2012, Plaintiff filed an administrative claim with the City. *See* Not. of Rem., Ex. A (initial complaint attaches administrative complaint), Dkt. No. 1-1.

Plaintiff initially represented himself when he first filed this case in San Francisco Superior Court on November 8, 2012, alleging "multiple torts" for actions taken by San Francisco Police Officers in connection with his arrest. Anderson Decl., Ex. A (initial Complaint), Dkt. No. 80-2. In his initial Complaint, Plaintiff named as Defendants the City and "San Francisco Police Officers with badges 127, 804 and 2260[.]" *Id.* ¶ 1. In other portions of his Complaint, however, Plaintiff only named the City as a Defendant. *See id.* (caption named Plaintiff as "Emil Lawrence MBA" and Defendant as "City and County of San Francisco"); ¶¶ 5-6 (naming as a Defendant only "City and County San Francisco" and no doe defendants).

On July 22, 2013, Plaintiff filed a First Amended Complaint ("FAC") that included a claim under 42 U.S.C. § 1983, and the City consequently removed the case to this Court on February 24, 2014. Not. of Rem., Ex. A (FAC). The FAC alleges he intends to sue "doe defendants" and elsewhere names "San Francisco Police Officer Badge #127, San Francisco Police Officer Badge #804, San Francisco Police Officer Badge #2260" as Defendants. *Id.* ¶¶ 1, 7. Plaintiff effected service on the City in January 2014, and the City filed an Answer on February 21, 2014. Answer, Dkt. No. 1-2. Plaintiff filed a "Notice" on March 25, 2014 in which he explained that "[o]n repeated occasion the San Francisco Police Department had evaded the plaintiff for service and information, as to the police officers in question," and that while "Plaintiff had a process server attempt to serve the Northern, Southern and Central San Francisco Police Stations, [] each time the process server was turned away by the police station clerk." Mar. 2014 Notice ¶ 2, Dkt. No. 10. He further explains he made "repeated attempts" to obtain "the names and addresses of the three police officers" with the badge numbers identified in his complaints, but "[o]n each attempt to get information on these SFPD officers, [he] was stonewalled[ and] turned away[.]" *Id.* He alleges he also "had a process server mail the San Francisco Police Department a copy of the complaint, and serve the SFPD." *Id.*

Plaintiff represented himself pro se in this case from its inception until July 2015. Mot. to Serv. at 1. In June 2014, he propounded discovery seeking the name and contact information for

the three Officers identified by their badge numbers in the complaints. Ceballo Decl., Ex. A (Pl.'s Req. for Production), Dkt. No. 82-2. The City responded with their names and addresses on July 31, 2014. *Id.*, Ex. B (City's Response), Dkt. No. 82-3. It does not appear Plaintiff then made any attempt to serve the Officers, but on December 8, 2014, he filed a Motion to Amend his complaint. He argued that while he had previously named the Officers by badge number in the FAC, "their legal names are missing from the document." 2014 Mot. to Amend, Dkt. No. 27. On December 29, 2014, the Court issued an Order noting the case management scheduling order set a deadline for seeking leave to amend one month prior to the date on which Plaintiff filed his Motion. Order re: 2014 Mot. to Amend, Dkt. No. 31. The Court noted that Plaintiff's Motion failed to explain his lack of diligence in seeking leave to amend, including that, "[f]or example, although Plaintiff seeks leave to add defendants, he has been aware of their names since July 31, 2014, when Defendant responded to discovery, yet he does not state why he could not add them sooner." *Id.* Ultimately, the Court thus found that Plaintiff had not shown good cause at that time to modify the scheduling order and denied Plaintiff leave to amend. *Id.*

Since that time, the parties have attended several settlement conferences with Magistrate Judge Jacqueline Scott Corley, and the Court appointed counsel for Plaintiff. Dkt. Nos. 53, 55, 63-65. The discovery cut-off date was in February 2015, and dispositive motions were due in April 2015. Case Management Order, Dkt. No. 19; Order Continuing Dispositive Motion Deadline, Dkt. No. 47. However, the Court also vacated the pretrial and trial deadlines while the parties engaged in settlement discussions. Dkt. No. 56. In the meantime, the parties have engaged in some limited discovery for settlement purposes[, including the depositions of the Officers Plaintiff previously attempted to name]. *See* Dkt. Nos. 71-73.

Most recently, a further case management conference, Plaintiff's counsel indicated Plaintiff wished to amend the FAC and to formally name and serve the Officers. Dkt. No. 77. The parties agreed to a briefing schedule, and the Court issued an Order on July 20, 2016 setting the briefing deadlines. Dkt. No. 78. The parties timely complied with those deadlines. Defendant does not oppose the filing of Plaintiff's amended complaint. *See* Non-Opposition.

During the hearing on Plaintiff's Motions, the Court inquired about the risk of prejudice if

it permitted Plaintiff to serve the Officers at this point. Following the hearing, the Court also ordered Defendants to provide supplemental briefing and evidence on this issue. *See* Suppl. Br. Order at 1 ("Defendants' Opposition does not articulate what prejudice the Officers or the City would suffer if they were brought into the case. Defendants should describe what, if any, prejudice they would suffer."). The Court also ordered the parties to meet and confer and "file a joint statement explaining what, if any, discovery, motions, etc., are anticipated if the Officers are served as Defendants, as well as when the parties could anticipate proceeding to trial" so as to assess "the potential impact on the case if the Officers are served at this point." *Id.* at 2.

In its Supplemental Brief, Defendant contends the officers "aver that they have never received copies of the complaint, they have never participated in this action, and there is no indication in the record that they had notice of being brought into the lawsuit." Def.'s Suppl. Br. at 1-2, Dkt. No. 86. Defendant also argues the Officers may have "ma[d]e separate arguments, possibly hire[d] outside counsel, and ma[d]e different financial decisions" and that "the City Attorney's Office would have evaluated this case differently had it known it was representing individual officers exposed to punitive damages rather than a dubious claim of *Monell* liability against the City." *Id.* at 2. Defendant, however, does not explain how it would have evaluated the case differently, except for contending that it "would have retained a police practices expert and various medical experts to refute plaintiff's claims." *Id.*

In his response, Plaintiff disputes Defendant's representations. Pl.'s Suppl. Br., Dkt. No. 88. He argues the record shows "(1) the Officer Defendants have had actual knowledge of this case and their status as named defendants since the case's outset; (2) the City has been litigating this case with knowledge that the Officer Defendants were named and faced individual liability for the excessive force claims (including punitive damages); and, (3) none of the Defendants is now impeded from litigating this case in any manner as they may deem appropriate to prepare for trial, including that Plaintiff has offered to be deposed for an additional four hours, has agreed that Defendants may designate expert witnesses not previously disclosed, and had offered to stipulate to any additional discovery they may seek[.]" *Id.* at 1 (citing Joint Statement at 1, Dkt. No. 87); *id.* at 3 (citing May 22, 2014 Joint Case Management Statement at 4, Dkt. No. 18 (where City

4

indicates "[t]he individually named defendants intend to move for summary judgment based on qualified immunity."); September 3, 2015 Joint Case Management Statement at 6, Dkt. No. 59 ("The primary legal issues are whether: . . . (2) the officers are entitled to qualified immunity . . . ")). Plaintiff points out that "neither of the Officer Defendants has been deposed without knowledge of their party status or that they might be served into the case." Joint Statement at 1 (Officer Badge 127 not deposed as of date of Joint Statement); Anderson Decl. ¶ 4, Dkt. No. 88-1 (attesting that Officer Badge 804 was deposed with representation by the City Attorney on August 26, 2016, after Motion to Serve filed); *id.*, Ex. A (Enea[2] Dep.) at 149:15-150:17 (Officer Enea learned about this lawsuit a couple years ago "or longer" and that he was named as a party).

The parties' Joint Statement indicates "Plaintiff does not need any discovery and will not bring any motions as a result of the Officer Defendants being served." Joint Statement at 1. Defendant and the Officer Defendants "(if served) seek the following: (1) to re-open the deposition of Plaintiff on a limited basis regarding any new allegations in the Second Amended Complaint []; (2) to conduct depositions of fact or expert witnesses; (3) to disclose police practices, liability, and/or medical experts; and, (4) to file a summary judgment motion or partial summary judgment motion." *Id.* Plaintiff has agreed to be further deposed by Defendants for up to four hours or such additional time as may be reasonably necessary. *Id.* Additionally, Plaintiff indicates he does need to disclose any additional initial experts but "reserve[s] the right to disclose an appropriate rebuttal expert(s) to any experts Defendants may disclose." *Id.* The parties propose at limited schedule, with a discovery cut-off date of December 12, 2016, a deadline of February 13, 2017 for Defendants to move for summary judgment, and a May 15, 2017 jury trial start date. *Id.* at 1-2.

**DISCUSSION**

**A.    Motion for Leave to File Amended Complaint**

Plaintiff's proposed Second Amended Complaint ("SAC") narrows his claims to (1) an excessive force claim pursuant to § 1983; (2) an assault and battery claim; and (3) a negligence

---

[2] Officer Joshua Enea was originally named in Plaintiff's earlier Complaints as Badge Number 2260; however, Plaintiff does not seek to serve Officer Enea at this point.

claim. Anderson Decl,. Ex. B (proposed SAC), Dkt. No. 79-3. It also names the Officers: Christa Peters (San Francisco Officer Badge Number 127), and Daniel Bonnel (San Francisco Officer Badge Number 804). *Id.* ¶¶ 4-5. As Defendants do not oppose Plaintiff's Motion to File an Amended Complaint (*see* Non-Opposition), and the proposed SAC streamlines and clarifies the claims in this case, the Court will grant Plaintiff leave to amend.

**B.     Motion for Leave to Serve Officers**

Plaintiff has also filed a motion for leave to serve the Officers. He acknowledges that if he is unable to serve the Officers at this point under Federal Rule of Civil Procedure 4(m) based on the earlier FAC, his claims against those Officers will be barred by the statute of limitations. Mot. to Serv. at 1-2; *see Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 980 (2015) (statute of limitations for excessive force claim for California-based § 1983 case is two years); Cal. Civ. Proc. Code § 335.1 (two year statute of limitations for assault, battery, or personal injury claims).[3]

Rule 4(m), as amended in 2015, provides in part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). As Plaintiff's FAC was filed on July 22, 2013, the deadline for service under Rule 4(m) was November 19, 2013.[4]

"Rule 4(m), as amended in 1993, *requires* a district court to grant an extension of time when the plaintiff shows good cause for the delay." *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007) (citation omitted; emphasis in original). "Additionally, the rule *permits* the district

---

[3] Neither party discusses whether tolling applies or whether Plaintiff could relate-back a newly filed complaint.

[4] Although this deadline may be somewhat complicated by Defendant's removal of this action from state to federal court, no party addressed this issue, and there appears to be no dispute that deadline for service has passed.

court to grant an extension even in the absence of good cause." *Id.* (citation omitted; emphasis in original); *see also In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001) ("First, upon a showing of good cause for the defective service, the court must extend the time period. Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period."). "Good cause" is generally equated with "diligence." *Townsel v. Contra Costa Cty., Cal.*, 820 F.2d 319, 320 (9th Cir. 1987). A showing of good cause requires more than inadvertence or mistake of counsel. *Id.*; *see, e.g.*, *Wei v. State of Hawaii*, 763 F.2d 370, 371-72 (9th Cir. 1985) (per curiam) (analyzing Rule 4(m)'s predecessor, 4(j), and finding evasion of service may constitute good cause); *Chemehuevi Indian Tribe v. Wilson*, 181 F.R.D. 438, 440 (N.D. Cal. 1998) (good cause may be shown where service has been attempted but not completed or where plaintiff was prevented from serving defendants by factors beyond his control).

In the absence of a showing of good cause, the Court's discretion to extend the time for service or to dismiss the action without prejudice "is broad." *In re Sheehan*, 253 F.3d at 513. However, a court's discretion under Rule 4(m) is not "limitless." *Efaw*, 473 F.3d at 1041. A court must consider factors including any "statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Id.* (citation and internal quotation marks omitted); *Crowley v. Bannister*, 734 F.3d 967, 976 (9th Cir. 2013) ("Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action." (quoting *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009)). Courts also generally focus their discretionary analysis on whether the moving party has shown "excusable neglect" for failing to earlier effect service. *Lemoge*, 587 F.3d at 1198.

The Court does not find good cause for the failure to serve the Officers. In early 2014—about a year after filing his initial Complaint and nearly six months after filing his FAC—Plaintiff attempted to discover the names of the Officers. *See* Mar. 2014 Notice (demonstrating Plaintiff sent letters to various city representatives in early 2014, but with no indication Plaintiff attempted to discover the names of the Officer Defendants or serve them in the immediate months following the filing of his initial Complaint or FAC). Then, even after obtaining the Officers' names in July 2014, Plaintiff did not serve them. While he now attempts to explain his confusion over the

Court's December 2014 Order on his Motion to Amend, Plaintiff does not explain why he did not attempt service before December. The Court does not have enough evidence at this time to conclude Plaintiff was unable to serve the Officers in a timely manner or that something prevented him from doing so. Without more, the Court cannot find Plaintiff was diligent in attempting to serve the Officers, and therefore cannot find good cause for failure to serve.

Nonetheless, even in the absence of a showing of good cause, the Court has broad discretion to permit late service under Rule 4(m). In determining whether to extend the time for service, the Court considers factors including the statute of limitations bar, prejudice to the defendant, actual notice of the lawsuit, and eventual service. *Efaw*, 473 F.3d at 1041. Similarly, the assessment of whether there has been excusable neglect "'encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence[.]'" *Lemoge*, 587 F.3d at 1192 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394 (1993)). In determining whether "neglect is excusable," courts consider "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Id.* (quotation omitted).

Defendants did not initially argue specific prejudice if they were served at this point, or that they did not receive actual notice of the lawsuit. Only in response to the Court's request for supplemental briefing did they argue there is presumptive and actual prejudice, and even then, they only make general statements that witnesses' memories fade with time. *See* Def.'s Suppl. Br. at 1. But Defendants provided no actual evidence of prejudice—despite the opportunity to do so. *See* Pl.'s Suppl. Br. at 1-2 (noting that while the Defendants' supplemental brief "avers" prejudice, this is only legal argument, and "Defendants have failed to submit any declarations or other evidence that shows lack of knowledge or any other prejudice as a result of the passage of time"). While the City also points out that it may have litigated this case differently if it knew the Officers would be involved, Plaintiff has highlighted at least two occasions where it is evident the City proceeded as though the Officers were involved in this suit. *See id.* at 3 (citing May 22, 2014 Joint Case Management Statement at 4 (City indicates "[t]he individually named defendants intend to move for summary judgment based on qualified immunity."); September 3, 2015 Joint

8

Case Management Statement at 6 ("The primary legal issues are whether: . . . (2) the officers are entitled to qualified immunity . . . ")). The City's supplemental brief provides conclusory statements that it would have litigated the case differently but without explanation about how it might have done so. The Court invited the City to articulate the prejudice it might suffer; the City did not do so effectively.

Without more, Court perceives no significant prejudice to Defendants at this time, and Plaintiff's arguments that the Officers received notice of this case long ago appears reasonable in light of the available evidence. While the length of delay in naming the Officers is not insignificant, Plaintiff has presented a number of details indicating his delay was mainly the result of negligence, rather than "deviousness or willfulness." *See Lemoge*, 587 F.3d at 1197 (quotation omitted). Plaintiff appears to be acting in good faith to now properly name the Officers he previously identified by badge number. There is no indication he seeks to name the Officers now for any illicit purpose. *See Hoffman v. Red Wing Brands of Am., Inc.*, 2014 WL 4636349, at *5 (D. Nev. Sept. 16, 2014) ("[W]hile [plaintiff]'s explanation for the delay is weak, there is no indication that she or counsel acted in bad faith or intended to prejudice [the defendants] or manipulate the judicial process.").

The Rule 4(m) determination also requires the Court to consider whether Plaintiff would be prejudiced if he is not able to serve Defendants. *See In re Sheehan*, 253 F.3d at 512. One of those considerations is the statute of limitations bar: "Relief may be justified . . . if the applicable statute of limitations would bar the re-filed action." Fed. R. Civ. P. 4, advisory committee's note to 1993 amendment; *Lemoge*, 587 F.3d at 1198 ("Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action."). Plaintiff analysis this issue; he simply agrees his claims would be barred in the event the Court dismisses this action. While it is possible Plaintiff's claims may be properly related back such that the statute of limitations would not bar them, that issue was not briefed by the parties. Based on the record before it, the Court finds there is at least some risk to Plaintiff on

9

statute of limitations grounds if an extension for service is not granted.[5] An extension under Rule 4(m) is appropriate under such circumstances. *See id.* at 1196, 1198 ("Because the statute of limitations has run preventing the [plaintiffs] from re-filing their action, extending time to complete service under Rule 4(m) is appropriate.").

Finally, the impact on the litigation at this point, while not trivial, is not so significant to warrant denying the motion to serve on that ground. The Court previously vacated the pending deadlines in this case, and while the discovery cut-off has passed, the Officers have already been involved in discovery as percipient witnesses, and Plaintiff indicates he "does not need any discovery and will not bring any motions as a result of the Officer Defendants being served." Joint Statement at 1; *see Hoffman*, 2014 WL 4636349, at *5 ("Discovery is well under way and both [defendants] have already appeared for deposition. And while they claim they have not yet propounded any discovery, they do not assert that they would require an extension of discovery in order to do so. Accordingly, the Court finds that any delay caused by [plaintiff]'s failure to timely effectuate service will not affect the proceedings in any detrimental way."); *cf. Efaw*, 473 F.3d at 1041 (affirming Rule 4(m) dismissal after a seven-year delay in service where the memories of all witnesses faded and the only other eyewitness died). The Officers are represented by the same counsel who has represented the City since the inception of this case, and there is no indication they would have handled the litigation any differently had they been joined earlier in the case. *Hoffman*, 2014 WL 4636349, at *5 ("any discovery that has been done to date on [the related Defendant]'s behalf will almost certainly benefit them. . . . [and] they undoubtedly had actual

---

[5] Regardless of the Court's decision on Plaintiff's Rule 4(m) Motion, it is possible Plaintiff could successfully serve the Officers under the relation back doctrine. Defendants did not challenge Plaintiff's Motion for Leave to File the SAC on futility grounds related to the statute of limitations or otherwise, perhaps in recognition of the permissive relation back standards in a 42 U.S.C. § 1983 action. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200-01 (9th Cir. 2014). Neither party raised the relation back doctrine in their briefing. In any event, if the Court now dismissed the Officers in this case under Rule 4(m) while there remains a possibility Plaintiff could re-file the action against them, such a dismissal at this point would merely create an "unnecessary procedural complication" from which there is nothing to be gained "save delay and frustration[.]" *Taylor v. Logic 20/20 Inc.*, 2014 WL 1379603, at *5 (W.D. Wash. Apr. 8, 2014). Consequently, even if the statute of limitations bar is not an issue in this case, the circumstances indicate the most sensible action is to permit service.

notice of the lawsuit well before the 12-day service deadline as they are represented by the same counsel who represents [the related Defendant].").  Moreover, having reviewed the parties' proposed schedule, which identifies the additional discovery Defendants intend to seek, the Court is satisfied the Officers can be included in this case without significant impact.

In sum, Plaintiff may not have shown good cause for serving the Officers at this point, but under Ninth Circuit precedent, he has shown excusable neglect such that the Court should appropriately exercise its discretion to permit leave to serve the Officers.

## CONCLUSION

Based on the foregoing analysis, Plaintiff's Motion for Leave to Amend to File his SAC is **GRANTED** and his Motion for Leave to Serve Officer Peters and Officer Bonnell is likewise **GRANTED**.  Plaintiff must file his SAC by October 14, 2016.  Defendants shall respond to the SAC pursuant to the Federal Rules of Civil Procedure.  The Court will issue a separate Case Management Order.

**IT IS SO ORDERED.**

Dated: October 7, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge