UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMIL LAWRENCE,

                    Plaintiff,

        v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

                    Defendants.

Case No. 14-cv-00820-MEJ

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 99

## INTRODUCTION

Pending before the Court is the Motion for Summary Judgment filed by Defendants the City and County of San Francisco (the "City"), San Francisco Police Department ("SFPD") Officer Christa Peters, and SFPD Officer Daniel Bonnel (collectively, "Defendants"). Dkt. No. 99. Plaintiff Emil Lawrence ("Plaintiff") filed an Opposition (Dkt. No. 110) and Defendants filed a Reply (Dkt. No. 117). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for the following reasons.

## MATERIAL FACTS

**A.      Plaintiff's Detention**

Karen Waksman filed an Incident Report with the SFPD alleging that her iPad had been stolen from a restaurant located at 1480 Fillmore Street, San Francisco, California on December 21, 2011.[1] Ceballo Decl., Ex. B ("Incident Report"), Dkt. No. 101. The Incident Report identifies

---

[1] In their Motion, Defendants assert Waksman filed the Incident Report on December 21, 2011, the day of the alleged theft. Mot. at 3 (citing Ceballo Decl., Ex. B). While the Incident Report attached as Exhibit B lists the "Occurrence to Date/Time" as "12/21/11 16:25", it appears the Report was filed on January 2, 2012. *See* Incident Report (listing the "Reported Date/Time" as

Plaintiff as the person suspected of taking her iPad. *Id.*

On January 2, 2012, Waksman called 911 to report that the person who stole her iPad had returned to the restaurant. Ceballo Decl., Ex. C ("Dispatch Report"). Peters and nonparty SFPD Officer Joshua Enea responded to the call. *Id.* at 1; Ceballo Decl., Ex. D ("Defs.' Peters Dep.") at 18:5-19; Anderson Decl., Ex. 9 ("Pl.'s Peters Dep.") at 18:5-19, Dkt. No. 111; Ceballo Decl., Ex. E ("Defs.' Enea Dep.") at 25:2-7. When Peters and Enea arrived at the restaurant, an employee identified Plaintiff as the person who had stolen Waksman's iPad. Defs.' Peters Dep. at 18:20-19:5; Pl.'s Peters Dep. at 18:20-19:5; Defs.' Enea Dep. at 25:25-26:10, 37:3-6. Peters and Enea approached Plaintiff to speak with him. Defs.' Enea Dep. at 29:5-20. They explained to Plaintiff that someone had accused him of taking an iPad. Pl.'s Peters Dep. at 24:6-15. The officers informed Plaintiff that he was not under arrest, but that the officers were detaining him pending an investigation. Defs.' Enea Dep. at 29:17-20, 37:13-21; Defs.' Peters Dep. at 25:8-9, 18-20; Pl.'s Peters Dep. at 25:8-9, 18-20.

Plaintiff loudly voiced his disagreement about the detention. Defs.' Peters Dep. at 26:3-11, 26:24-27:10; 28:16-25; Pl.'s Peters Dep. at 26:3-11, 26:24-27:10; Defs.' Enea Dep. at 58:6-8, 23-25Pl.'s Enea Dep. at 37:25-38:3, 41:9-12. Peters and Enea testified that Plaintiff was pacing or trying to walk away. Defs.' Peters Dep. at 27:15-16, 29:2; Pl.'s Peters Dep. at 27:15-16, 29:2; Defs.' Enea Dep. at 57:25-58:1, 77:9-10; *but see* Pl.'s Peters Dep. at 39:20-25 (when asked whether Plaintiff tried to evade arrest, Peters responded Plaintiff "[j]ust verbally resist[ed]. He didn't try to run away or anything at that point."). The responding officers placed Plaintiff in handcuffs. Defs.' Peters Dep. at 25:20-24; 33:25-34:2; Pl.'s Peters Dep. at 25:20-24; Defs.' Enea Dep. at 57:21-58:11. Plaintiff informed Peters and Enea that he had a pin or a plate in his wrist. Defs.' Peters Dep. at 34:3-5 (Plaintiff mentioned he had a "pin . . . or something" in his wrist), 15-16 (remembering Plaintiff "yelling something about a pin or prior surgery"); Pl.'s Peters Dep. at 34:3-5, 15-16; Pl.'s Lawrence Dep. at 100:23-24 (testifying he has a plate in his wrist). For that

---

"1/2/12"). The Court notes the Incident Report is described as a "Supplemental" report. *See id.* It may be that Waksman filed an incident report on the date of the alleged theft, and the Incident Report attached to the Ceballo Declaration supplements that initial report.

1   reason, the officers used two sets of handcuffs to restrain Plaintiff.  Defs.' Peters Dep. at 2-3;

2   Ceballo Decl., Ex. F ("Defs.' Aug. 19 Lawrence Dep.") at 102:4-8, 109:1-2; Anderson Decl., Ex.

3   7 ("Pl.'s Lawrence Dep.") at 100:25-101:2.  Plaintiff described the handcuffs as being "bone

4   tight."  Pl.'s Lawrence Dep. at 100:25-101:1.  He "felt nonstop pain" due to "the fact that [his]

5   hands were twisted and . . . [he] could no longer move them one way or another."  *Id.* at 115:10-

6   13.  He further testified that he suffered "numbness in [his] thumbs and forefingers for up to six

7   weeks."  *Id.* at 115:17-19.

8   **B.      Plaintiff's Placement into the Patrol Car**

9          When Peters directed Plaintiff into the back of the patrol car, Plaintiff objected: "Listen,

10  you don't expect me to sit in a backseat that looks like it's fit for a midget, do you?".  Defs.' Aug.

11  19 Lawrence Dep. at 108:10-14; Defs.' Enea Dep. at 77:5-7; *see also* Dispatch Report ("GUY IN

12  CAR IS KINDA BIG" (capitalization in original)).  Peters insisted Plaintiff get into the patrol car.

13  Defs.' Aug. 19 Lawrence Dep. at 108:15.  The parties agree Plaintiff had difficulty doing so, and

14  had to be physically assisted by Peters.  *See id.* at 110:23-111:25; Pl.'s Lawrence Dep. at 111:1-

15  112:25.  Plaintiff testified that while trying to get him into the car, Peters pushed him with her

16  hands and "her leg, either her knee or her foot or combination thereof."  Pl.'s Lawrence Dep. at

17  112:15-16.

18         Once Plaintiff was in the patrol car, Enea went into the restaurant to review video footage

19  of the alleged theft.  Defs.' Enea Dep. 95:11-14.  This took somewhere between ten to forty-five

20  minutes.  *Compare* Defs.' Enea Dep. 96:19-97:1 (Plaintiff sat in the back of the police car for ten

21  to fifteen minutes before Peters transported him to Northern Station) *with* Pl.'s Lawrence Dep. at

22  116:18-20 ("[W]e sat in the car for 40 minutes – 30 to 40 minutes.  I think it was probably up to

23  45 minutes, but it could be 30 to 45 minutes.").  Having reviewed the video, Enea returned outside

24  to Peters, informed her that Plaintiff "is the individual that's on the video footage", and told her to

25  take Plaintiff to Northern Station.  Defs.' Enea Dep. at 97:15-24; Pl.'s Enea Dep. at 97:15-24.  At

26  this point, Plaintiff was under arrest.  Defs.' Enea Dep. at 97:4-6, 98:14-15 ("At the time

27  [Plaintiff] was being transported that was the arrest."); Pl.'s Defs.' Enea Dep. at 97:4-6; Pl.'s

28  Peters Dep. at 42:20-25 ("Q.  At what point did [Plaintiff's] detainment turn into an arrest?  A.

3

1   When Officer Enea got back and let us know the details, we filled out a citation.").

2   **C.**     **Plaintiff's Removal from the Patrol Car**

3      Peters, on her own, transported Plaintiff a few blocks away to Northern Station. Dispatch

4 Report at 1; Defs.' Peters Dep. at 113:3-6; Pl.'s Peters Dep. at 44:14-15; Defs.' Enea Dep. at

5 24:17-20. During the drive, Plaintiff continued "yelling about his disagreement with the arrest."

6 Pl.'s Peters Dep. at 44:21-24.

7      At Northern Station, Peters opened the door to let Plaintiff out, but Plaintiff refused to

8 and/or could not exit the patrol car. Defs.' Peters Dep. at 45:11-14; Pl.'s Peters Dep. at 45:11-14.

9 Peters testified that Plaintiff "was very upset" and "it looked like he kind of got in a way where he

10 couldn't get out by himself, kind of wedged a little bit." Defs.' Peters Dep. at 45:15-18; Pl.'s

11 Peters Dep. at 45:15-18; *see id.* at 46:11-16 (both) (explaining that "if you don't sit right, you can

12 get kind of stuck. [] It's just real tight back there. So if you're going to move around and get

13 upset, no matter what size you are, you're going to get kind of contorted, and it's hard to move

14 and get out on your own."). Peters "knew at this point [Plaintiff] couldn't" exit the vehicle and

15 knew "she needed help getting him out." Defs.' Peters Dep. at 47:2-3; Pl.'s Peters Dep. at 47:2-3.

16 During this time, Plaintiff was "screaming 'you can't make me get out of the car. I didn't do

17 anything,' stuff to that effect." Defs.' Peters Dep. at 46:20-22; Pl.'s Peters Dep. at 46:20-22.

18      Peters "didn't believe [she] was strong enough to lift [Plaintiff]," so she radioed for

19 another officer to help her remove Plaintiff from the vehicle.[2] Defs.' Peters Dep. at 45:19-25; Pl.'s

20 Peters Dep. at 45:19-25. Peters then flagged down Bonnel, who had just driven past her in the

21 parking lot. Defs.' Peters Dep. at 47:4-16; Pl.'s Peters Dep. at 47:4-16. Peters explained to

22 Bonnel that Plaintiff was "stuck" and "refusing to get out of the car." Defs.' Peters Dep. at 48:13-

23 15; Pl.'s Peters Dep. at 48:13-15. Bonnel observed Plaintiff acting "[v]ery belligerent" and

24 screaming "'You can't make me get out of his car.'" Ceballo Decl., Ex. I ("Defs.' Bonnel Dep.")

25 at 32:14-21; Anderson Decl., Ex. 10 ("Pl.'s Bonnel Dep.") at 32:14-21. Bonnel believed Plaintiff

26 did not need help, but rather simply refused to get out of the car. Defs.' Bonnel Dep. at 25:11-19;

27

28    ――――――――――
[2] Peters estimates Plaintiff weighed between 200 and 210 pounds. Pl.'s Peters Dep. at 62:20-21.

Pl.'s Bonnel Dep. at 25:11-19.

Bonnel "spoke to [Plaintiff] for a few minutes and tried to convey the fact that he needed to get out of the back of the car[.]" Defs.' Bonnel Dep. at 33:9-11; Pl.'s Bonnel Dep. at 33:9-11. Plaintiff continued to scream that Bonnel could not make him get out. *Id.* at 33:11-13 (both). Bonnel asked Plaintiff to get out of the car at least ten times. *Id.* at 37:18-22 (both). Specifically, Bonnel "explained to [Plaintiff] that no matter what the circumstances are he's going to have to get out of the car, so make it easy on yourself and make an effort to get out." *Id.* at 38:1-4 (both).

Bonnel proceeded to remove Plaintiff from the vehicle. Bonnel describes Plaintiff's removal as follows: he "placed [his] right arm under [Plaintiff's] right arm in the armpit area, and then put [his] left arm under [Plaintiff's] left armpit area, lifted [Plaintiff] up and out of the car, and set him down butt first on the sidewalk next to the open door area of the vehicle." Defs.' Bonnel Dep. at 42:15-19; Pl.'s Bonnel Dep. at 38:15-19; *see id.* at 43:3-18 (both); Defs.' Peters Dep. at 58:4-12; Pl.'s Peters Dep. at 58:4-12. Plaintiff testified Bonnel "grabbed [him] by the coat . . . and pulled [him] right out forcefully." Pl.'s Lawrence Dep. at 135:5-6; *see id.* at 143:5-10 ("I'm facing forward, and he's grabbing me from the side.").

Plaintiff was yelling throughout this process. Plaintiff testified he "was telling [Bonnel], 'Do not drop me. Please do not drop me on my hands. Don't drop me on my back, please.'" Pl.'s Lawrence Dep. at 135:7-9. Plaintiff explains he "was yelling at [Bonnel] because [he] felt the pain" in his hands and back. *Id.* at 135:12-13. Bonnel describes Plaintiff as "[s]creaming incoherently. [He] couldn't tell what [Plaintiff] was saying." Defs.' Bonnel Dep. at 56:19; Pl.'s Bonnel Dep. at 56:19. Bonnel does not recall Plaintiff begging with him to keep him upright. *Id.* at 56:21-22 (both).

Although Plaintiff "can't recall because it happened very quickly . . . , [he] felt [he] was dropped at least from one and a half feet to three feet from the top because [Bonnel] didn't just put [him] on the ground. [Bonnel] kind of brought [him] down and then just let [him] go, something like that[.]" Defs.' Lawrence Dep. at 145:21-25; Pl.'s Lawrence Dep. at 145:21-25.

Bonnel testified that after he pulled Plaintiff from the police vehicle, he "placed [Plaintiff] on his behind, and then [Plaintiff] was helped to his feet by [Bonnel] and Officer Peters, . . . and

5

he stood up." Defs.' Bonnel Dep. at 52:5-8; Pl.'s Bonnel Dep. at 52:5-8. Bonnel denies dropping Plaintiff on the ground and denies Plaintiff fell to the ground. Defs.' Bonnel Dep. at 56:3-9; Pl.'s Bonnel Dep. at 56:3-9; *see id.* at 55:16-19 (both) (confirming he "set [Plaintiff] on the ground gently"); *but see* Defs.' Peters Dep. at 59:15-17; Pl.'s Peters Dep. at 59:15-17 (To Peters, "it looked like . . . they both . . . kind of not fell hard to the ground, but it wasn't super smooth, but not intentional."). Bonnel did not give Plaintiff an opportunity to stand up. Defs.' Bonnel Dep. at 55:14-15; Pl.'s Bonnel Dep. at 55:14-15. Rather, once Plaintiff was on the ground, Bonnel and Peters helped Plaintiff to stand. Defs.' Bonnel Dep. at 52:6-7; Pl.'s Bonnel Dep. at 52:6-7; Pl.'s Peters Dep. at 61:16-17.

**D.      Events Inside Northern Station**

Once Plaintiff was on his feet, Bonnel and Peters walked him into the station. Pl.'s Peters Dep. at 72:11-15; *see* Defs.' Lawrence Dep. at 132:9 ("They dragged me inside[.]"); Pl's Lawrence Dep. at 132:9 (same). Bonnel and Peters sat Plaintiff on a bench and secured him to it. Pl.'s Peters Dep. at 72:18-73:11.

During the time Plaintiff remained on the bench, he declined an offer for medical assistance. Pl.'s Lawrence Dep. at 138:14-17. There is evidence Plaintiff also declined to answer other questions regarding his medical condition. *See* Ceballo Decl., Ex. J (Medical Screening Form). Plaintiff denies anyone asked him any such questions. Defs.' Lawrence Dep. at 138:20-25; Pl.'s Lawrence Dep. at 138:20-25.

Enea returned to Northern Station and gave Plaintiff a Notice to Appear. Ceballo Decl., Ex. L. The Notice to Appear is dated January 2, 2012 and notes a time of "1600." *See id.* Plaintiff signed the Notice. *See id.* He was released thereafter.

**C.      Procedural Background**

On July 22, 2013, Plaintiff, then pro se, initiated this action against the City and SFPD in the Superior Court of California. Dkt. No. 1, Ex. A (Compl.). The City removed the action to this Court on February 24, 2014. Notice of Removal, Dkt. No. 1. On December 8, 2014, Plaintiff sought to amend his Complaint. Dkt. No. 27. The Court denied that Motion as untimely. Dkt. No. 31. On August 4, 2016 and with the benefit of appointed counsel (*see* Dkt. No. 55), Plaintiff

again moved to amend the Complaint (Dkt. No. 79). The Court permitted the amendment (Dkt. No. 89), and Plaintiff filed the operative Second Amended Complaint ("SAC") on October 13, 2016 (Dkt. No. 91).

In the SAC, Plaintiff asserts the following claims: (1) pursuant to 42 U.S.C. § 1983 and California Civil Code section 52.1, excessive force in violation of the Fourth and Fourteenth Amendments; (2) assault and battery; and (3) negligence. SAC ¶¶ 23-37. Defendants seek summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the

nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322 (internal quotations omitted).

Additionally, at the summary judgment stage, parties must set out facts they will be able to prove at trial. At this stage, courts "do not focus on the admissibility of the evidence's form . . . . [but] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted). "While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citations omitted). Accordingly, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Celotex*, 477 U.S. at 324 (a party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

## EVIDENTIARY OBJECTIONS

Before turning to the parties' substantive arguments, the Court first considers Plaintiff's evidentiary objections. *See* Opp'n at 24-25. Plaintiff objects to two categories of evidence: (1) a surveillance video and (2) SFPD reports. *Id.* at 25; Ceballo Decl., Ex. A (surveillance video, manually filed with the Court) & Exs. B, C, G, J, L (SFPD reports). Defendants do not address these objections in their Reply.

Counsel for Plaintiff declares "Defendants have not previously produced this surveillance

video to Plaintiff during discovery in this litigation." Anderson Decl. ¶ 12. Defendants do not dispute this assertion. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As Defendants did not produce this video, the Court SUSTAINS Plaintiff's objection. The Court does not rely on it in this Order, and Defendants may not offer it as evidence at trial.

As to the police reports, Plaintiff argues that Defendants have not properly authenticated them and that they contain inadmissible hearsay statements. Opp'n at 25. Counsel for Defendants declares these are true and correct copies of SFPD records. Ceballo Decl. ¶¶ 3-4, 8, 11, 13. "At the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form. [Courts] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Exhibits B, C, G, J, and L could be admitted into evidence at trial; for instance, the authors of the reports could testify as to their contents based on their personal knowledge. *See* Fed. R. Civ. P. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). Because the reports' contents may be presented in an admissible form at trial, the Court may consider them at the summary judgment stage. *See Fraser*, 342 F.3d at 1037. Accordingly, the Court OVERRULES Plaintiff's objections to Exhibits B, C, G, J, and L.

**DISCUSSION**

**A.    First Amendment Claim**

While Plaintiff concedes the SAC does not contain "a claim labeled 'Violation of First Amendment Rights'" (Opp'n at 15; *see* SAC), he argues "the allegations support a First Amendment claim against Officer Peters, and the deposition testimony of the police officers who stopped/detained/arrested Mr. Lawrence on January 2, 2012, clearly supports such a claim." *Id.*

(citing SAC ¶¶ 15-16, 27-28).[3]  He offers to "expeditiously amend the complaint to specifically allege a First Amendment claim against Officer Peters" if the Court should so request, though he contends that "properly labeling every claim or invoking the proper legal theory is not necessary under the liberal pleading standard of the federal rules." *Id.* (citing *Johnson v. City of Shelby, Miss.* ("*Johnson II*"), 135 S. Ct. 346, 346 (2014) (per curiam)).  Defendants oppose Plaintiff's attempt to add a First Amendment claim.  Reply at 2-3.

The paragraphs in the SAC upon which Plaintiff relies broadly refer to Plaintiff's "rights."[4] *See* SAC ¶ 15 ("Emil asserted his rights by asking Defendant Officer [Peters] whether he was under arrest and, if so, the charges."); *id.* ¶ 16 ("As they began to handcuff him, Emil continued to assert his rights by asking why he was being arrested and he specifically requested that Defendant Officer [Peters] not cuff his arms and wrists too tightly because he had a medical and/or physical condition – a metal plate in his right arm/wrist as a result of a previous fracture and subsequent operation."); *id.* ¶ 27 ("Emil is informed and believes and thereon alleges that Emil's assertion of his rights, including by asking whether he was being arrested and, if so, for what, and/or his complaining of his physical and/or medical limitations and pain, were the determining, or a substantial motivating, factor in Defendants' wrongful conduct.").  They do not specifically mention his First Amendment rights.

*Johnson II* is distinguishable.  In *Johnson II*, the plaintiffs alleged the City of Shelby violated their Fourteenth Amendment due process rights, but they did not expressly invoke § 1983 in their complaint.  135 S. Ct. at 346.  The City of Shelby moved for summary judgment, arguing that because the plaintiffs did not invoke § 1983 in their complaint, the plaintiffs should be limited to maintaining their action solely directly under the Fourteenth Amendment.  *Johnson v. City of Shelby, Miss.* ("*Johnson I*"), 743 F.3d 59, 61 (5th Cir. 2013), *rev'd*, 135 S. Ct. 346 (2014).  The trial court entered summary judgment in favor of the City of Shelby and denied the plaintiffs' subsequent request for leave to amend the complaint to invoke § 1983.  *Id.*

---

[3] Plaintiff does not identify specific portions of Defendants' deposition testimony.

[4] Plaintiff also cites paragraph 28(c); however, this paragraph does not suggest any violation of Plaintiff's First Amendment rights.  *See* SAC ¶ 28(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

The Supreme Court reversed.  *See Johnson II*.  The Court noted that while the "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson II*, 135 S. Ct. at 346.  In other words, "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Id.* at 347.

Unlike the complaint at issue in *Johnson*, the SAC expressly invokes § 1983 as the theory of liability for Plaintiff's Fourth and Fourteenth Amendment claims.  SAC at 7 & ¶¶ 10, 29.  The SAC does not, however, assert or reference the First Amendment, Plaintiff's right to free speech, or any other allegation that would suggest Plaintiff was asserting a claim involving his First Amendment rights.  *See* SAC.  On the contrary, the SAC states that "[t]his action arises from Defendants' use of excessive force against Emil, on or about January 2, 2012, in San Francisco, California, resulting in the deprivation of Emil's rights under the Fourth and Fourteenth Amendments to the United States Constitution and his common law tort and statutory rights to not be subjected to the misconduct of police officers as alleged herein." *Id.* ¶ 1.  Plaintiff drafted the SAC with the assistance of counsel; as such, the allegations need not be liberally construed.  *Cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed . . . , and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted)).  Moreover, permitting Plaintiff to assert a First Amendment claim now, long after the close of discovery, would be highly prejudicial to Defendants.  As such, the Court will not at this time consider the merits of a First Amendment claim.

**B.     42 U.S.C. § 1983**

      1.     <u>Legal Standard</u>

Section 1983 provides a remedy constitutional tort violations committed by state and local government officials.  It provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). To prevail on a § 1983 claim, "a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (internal quotation marks and brackets omitted).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). "The salient question is whether the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks and edits omitted). Courts exercise their sound discretion in deciding which prong of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case. *al-Kidd*, 563 U.S. at 735.

"The plaintiff bears the burden of proof that the right allegedly violated was clearly established." *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation marks omitted). "To meet this standard the very action in question need not have previously been

held unlawful." *Id.* (internal quotation marks omitted). This is particularly true in the Fourth Amendment context, where the constitutional standard of "reasonableness" demands a fact-specific inquiry. *Mattos*, 661 F.3d at 442. The question is "whether a reasonable officer would have had fair notice that the action was unlawful[.]" *Tarabochia*, 766 F.3d at 1125 (internal quotation marks and brackets omitted). Fundamentally, "[t]he qualified immunity doctrine rests on a balance between, on the one hand, society's interest in promoting public officials' observance of citizens' constitutional rights and, on the other, society's interest in assuring that public officials carry out their duties and thereby advance the public good." *Beier v. City of Lewiston*, 354 F.3d 1058, 1071 (9th Cir. 2004).

### 2. Excessive Force

The Fourth Amendment guarantees "[t]he right of the people . . . against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985)).[5] Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hughes v. Kisela*, 841 F.3d 1081, 1085 (9th Cir. 2016). The reasonable officer perspective "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at

---

[5] Plaintiff alleges Defendants violated his "to be free from excessive and unreasonable force in the course of arrest, detention, or seizure as secured by the Fourth and Fourteenth Amendments to the U.S. Constitution[.]" SAC ¶ 24. The Supreme Court has made clear, however, that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis in original).

stake." *Id.* at 396 (internal quotation marks omitted). In other words, courts "must balance the amount of force applied against the need for that force." *Bryan v. MacPherson*, 630 F.3d 805, 823–24 (9th Cir. 2010). "Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (citing *Graham*, 490 U.S. at 395).

The fact- and circumstance-specific nature of the reasonableness test makes it "not capable of precise definition or mechanical application[.]" *Graham*, 490 U.S. at 396 (internal quotation marks omitted). Courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Courts in the Ninth Circuit "'first consider[] the nature and quality of the alleged intrusion; [] then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.'" *Thomas v. Dillard*, 818 F.3d 864, 889 (9th Cir. 2016), *as amended* (May 5, 2016) (quoting *Mattos*, 661 F.3d at 441). "These factors, however, are not exclusive. Rather, [courts] examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Bryan*, 630 F.3d at 826 (internal quotation marks omitted).

Plaintiff alleges the following constitute excessive force: Peters' use of overly tight handcuffs, Bonnel's use of force to remove Plaintiff from the patrol vehicle, and Peters' failure to intercede with Plaintiff's removal from the patrol vehicle. The Court examines each in turn.

a.     *Handcuffs*

1.     Constitutional Violation

"[O]verly tight application of handcuffs can, depending on the circumstances, constitute a violation of the Fourth Amendment." *Santos*, 287 F.3d at 854 (citing *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993)). "The issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 960 (9th

Cir. 2000).

Based on this record and taking the facts in the light most favorable to Plaintiff, a reasonable jury could find that Peters' use of the handcuffs constituted unreasonable force. Peters testified that Plaintiff "sa[id] it hurt" when she only used one set of handcuffs on Plaintiff, and that Plaintiff "mentioned something about his wrist, having a pin in there, or something." Defs.' Peters Dep. at 34:3-6; *see id.* at 34:14-16. Peters therefore "went ahead and used two sets" of handcuffs to secure Plaintiff's hands behind his back. *Id.* at 34:16. But even with the double handcuffs, Plaintiff testified that Peters made the handcuffs "bone tight." Pl.'s Lawrence Dep. at 100:25-101:1. Plaintiff told Peters that the handcuffs still caused him pain. *See id.* at 115:14-15 ("I kept telling her about [the nonstop pain], and all she would do is turn the radio up."). While Peters testified that she used two sets of handcuffs on Plaintiff after Plaintiff "yell[ed] something about a pin or prior surgery" (Defs.' Peters Dep. at 34:15-16), there is no evidence that Peters checked the tightness of the handcuffs or placed another set of handcuffs on Plaintiff in response to his complaints after Plaintiff told her that the handcuffs caused him pain. Defendants offer no facts suggesting it was necessary to handcuff Plaintiff tightly in the manner he described. *Cf. Palmer*, 9 F.3d at 1436 (denying qualified immunity to officer who "presented no evidence that would justify handcuffing [the plaintiff] so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after [the plaintiff] complained of the pain.").

Defendants argue there is no "competent evidence" that Plaintiff was physically injured by the handcuffing. Mot. at 7-8. This argument is unavailing. As an initial matter, a physical injury is not required to establish a constitutional violation. *See Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) ("A plaintiff may prove a violation of § 1983 without demonstrating that the deprivation of his or her constitutional rights caused any actual harm."). But a reasonable jury could find that even Plaintiff's "superficial" injuries (Mot. at 8; Pl.'s Lawrence Dep. at 132:10-14), coupled with the fact that he informed Peters that he was in pain, suffice to demonstrate a constitutional injury.

There is evidence that Plaintiff informed Peters that the double handcuffs were too tight even after she placed double cuffs on him. Since the Court has no facts before it that after Plaintiff

15

continued to complain that the handcuffs caused him pain, Peters loosened the cuffs, checked their tightness, or otherwise determined the cuffs were appropriately tight, at this point and on this record, the Court must find that "a reasonable jury could find that [Peters] used an unreasonable amount of force in handcuffing [Plaintiff] and as a result violated h[is] Fourth Amendment rights." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003); *see Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (holding overly tight handcuffing can constitute excessive force when it causes injury or where officers ignore plaintiff's complaints about the handcuffs being too tight).

### 2. Qualified Immunity

Having found that a reasonable trier of fact could conclude Peters' handcuffing of Plaintiff violated his constitutional rights, the Court considers whether Peters is entitled to qualified immunity. The Court finds she is not. When these events occurred in 2012, it was clearly established that overly tight handcuffs constituted excessive force. *See Palmer*, 9 F.3d at 1436 (where a police officer "fastened [the plaintiff]'s handcuffs so tightly around his wrist that they caused [plaintiff] pain and left bruises that lasted for several weeks" and "presented no evidence that would justify handcuffing [the plaintiff] so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after [the plaintiff] complained of the pain[,]" holding that "under these circumstances, no reasonable officer could believe that the abusive application of handcuffs was constitutional."); *Wall*, 364 F.3d at 1112 (9th Cir. 2004) ("It is well-established that overly tight handcuffing can constitute excessive force." (citing *Meredith*, 342 F.3d at 1061, 1063–64; *LaLonde*, 204 F.3d at 960)); *LaLonde*, 204 F.3d at 960 ("A series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force." (citing *Palmer*, 9 F.3d; *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989)).

### 3. Summary

Based on the record before it, the Court finds there is a genuine issue of fact as to whether Peters' use of the handcuffs on Plaintiff after he complained they were causing him pain constituted excessive force. In addition, the Court finds it was clearly established that a reasonable officer in Peters' position should have known that overly tight handcuffs could violate Plaintiff's constitutional rights. As such, the Court DENIES Defendants' Motion for Summary

1 Judgment as to Peters to the extent it is based on the overly-tight handcuffing of Plaintiff.

2                 b.     *Plaintiff's Removal from the Patrol Vehicle*

3         Plaintiff alleges Bonnel used excessive force against him by forcibly removing him from

4 the patrol vehicle. Opp'n at 9-12. He further contends Peters' liability is co-extensive with

5 Bonnel's because she violated her duty to intercede when Bonnel used excessive force against

6 Plaintiff. *Id.* at 17.

7         There are no facts in the record that would allow a reasonable jury to find Bonnel used

8 excessive force in removing Plaintiff from the vehicle under these circumstances. It is undisputed

9 that Plaintiff either was unable or refused to exit the patrol vehicle. *See* Defs.' Peters Dep. at 46:5-

10 6 ("I needed help getting [Plaintiff] out because he looked like he was kind of stuck to me."); Pl.'s

11 Peters Dep. at 46:5-6 (same); Defs.' Aug. 19 Lawrence Dep. at 132:3-4 ("I couldn't come out.");

12 Pl.'s Lawrence Dep. at 132:3-4 (same); Defs.' Bonnel Dep. at 25:11-16 (Plaintiff "was just simply

13 refusing to get out of the car"); Pl.'s Bonnel Dep. at 25:11-16 (same). Construing the facts in the

14 light most favorable to Plaintiff, Plaintiff was unable to exit the vehicle on his own volition, and

15 he did not willfully disobey orders. Bonnel's assistance was therefore necessary to remove

16 Plaintiff from the car, and there is no evidence sufficient to create a triable fact that Bonnel used

17 an unreasonable amount of force to do so. *See* Defs.' Aug. 19 Lawrence Dep. at 132:4-6 (Bonnel

18 "had to pull me like this to get my feet out of the hole. He just pulled, and then they came out.");

19 Pl.'s Lawrence Dep. at 132:4-6 (same). Short of leaving Plaintiff stuck in the back seat of the

20 patrol car, some physical force was required to remove him. Plaintiff has not identified any

21 competent evidence suggesting Peters used more force than was reasonable to achieve this goal.

22         "Police officers need not use the least intrusive means available to them[.]" *Luchtel v.*

23 *Hagemann*, 623 F.3d 975, 982 (9th Cir. 2010). Courts have recognized that officers may use

24 reasonable force to remove an uncooperative individual from a vehicle. *See Gahn v. Fujino*, 39

25 F.3d 1187 (9th Cir. 1994) ("[I]t would not be unreasonable for an officer to use minimal force to

26 remove the resisting suspect from the vehicle in order to complete the arrest and control the

27 situation.") (unpub.); *McCloskey v. Courtnier*, 2012 WL 646219, at *2 (N.D. Cal. Feb. 28, 2012)

28 (citing *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that

the right to make an arrest or investigatory stop necessarily carried with it the right to use some degree of physical coercion or threat thereof to effect it.")); *see also Carter v. City of Post Falls, Idaho*, 2009 WL 2368436, at *7 (D. Idaho July 31, 2009) (citing *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005); *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002); *Rogala v. Dist. of Columbia*, 161 F.3d 44, 49, 54–55 (D.C. Cir.1998)). Bonnel used the minimum amount of force needed to extract Plaintiff from the car: he simply used his arms to pull Plaintiff out of the vehicle.

The Supreme Court has made clear that "[w]ith respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Based on the record before the Court, there is no evidence that Bonnel used excessive force. Plaintiff's arguments in opposition are not based on evidence, and therefore are insufficient to create a genuine dispute of fact. First, Plaintiff argues the fact he was injured constitutes evidence of excessive force. *See* Opp'n at 11. But Plaintiff's injuries are not, in and of themselves, evidence of excessive force under these circumstances. *Cf. Wisler v. City of Fresno*, 2008 WL 2625865, at *7 (E.D. Cal. June 26, 2008) (finding that pulling an individual out of a car, where the individual had not behaved in an assaultive manner but refused to comply with demands to exit the vehicle, constitutes a low amount of force); *Jackson v. City of Bremerton*, 268 F.3d 646, 650, 653 (9th Cir. 2001) (affirming excessive-force summary judgment in favor of police officers despite the fact the plaintiff's finger was fractured and permanently damaged during arrest).

Second, Plaintiff argues, without citation, that "being intentionally dropped on [Plaintiff's] already-handcuffed hands from a height of one and a half to three feet. . . . violates his clearly established constitutional right to be free of excessive force while detained." Opp'n at 14. The only evidence that Bonnel intended to drop Plaintiff is Plaintiff's own conclusory testimony that Bonnel "smiled" when he dropped Plaintiff onto the ground, which he did "intentionally to show all the guys behind him: This is the way you do it as a policeman." Pl.'s Lawrence Dep. at 135:20-136:3. But Plaintiff lacks personal knowledge to competently testify about any meaning behind Bonnel's smile; without other corroborating facts as to Bonnel's intent, Plaintiff's

18

testimony is simply speculation.  This does not create a genuine dispute of material fact.  *See Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("'[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.'" (quoting *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996)) (brackets in *Loomis*)).

There is no evidence in the record that would allow a reasonable trier of fact to conclude Bonnel used an unreasonable level of force to extract Plaintiff from the patrol car.  The Court therefore GRANTS summary judgment in favor of Bonnel on Plaintiff's § 1983 claim.  Because the Court finds there was no constitutional violation in removing Plaintiff from the patrol car, it need not consider whether Peters violated her duty to intercede.

## C.  Monell Liability

### 1.  Legal Standard

A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  When an individual sues a municipality for violation of a constitutional right, the municipality is liable only if the individual can establish that the municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he [or she] suffered."  *Id.* at 694-95; *see Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007).  In order to hold a public entity liable, a plaintiff must demonstrate that the unlawful governmental action was part of the public entity's policy or custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury.  *Monell*, 436 U.S. at 690-92, 694-95.

### 2.  Analysis

Plaintiff does not argue the City failed to properly train its officers on the use of handcuffs.  Opp'n at 17-18.  Plaintiff only contends the City did not train its police officers on how to remove a person from a patrol vehicle.  *Id.* at 18.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompso*n, 563 U.S. 51, 61 (2011).  "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to

deliberate indifference to the rights of persons with whom the untrained employees come into contact. [] Only then can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (internal quotation marks, brackets, and citations omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (quoting *Connick*, 563 U.S. at 61). It requires "proof that the municipality had 'actual or constructive notice that a particular omission in their training program' will 'cause[ ] [municipal] employees to violate citizens' constitutional rights.'" *Id.* (quoting *Connick*, 563 U.S. at 62.

Peters testified that she "d[id]n't remember any specific training on a custody that's difficult or very heavy." Pl.'s Peters Dep. at 55:10-11. Bonnel similarly testified that he did not receive training on what to do if he someone refused to get out of a police car. Pl.'s Bonnel Dep. at 27:1-5. That they did not receive such training is not, without more, sufficient to establish the City acted with deliberate indifference in not providing police officers with such training. Plaintiff offers no evidence that the City had actual or constructive notice that its failure to provide training on how to remove an individual from the back of a patrol car caused its officers to violate its citizens' constitutional rights. *See Connick*, 563 U.S. at 61. Nor is there evidence that officers have engaged in a pattern of similar Fourth Amendment violations. *See id.* at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." (quoting *Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997))).

As such, even if the City did not train its officers on how to remove an individual from the back of a patrol vehicle, there is no evidence that its failure to do so amounts to deliberate indifference. Accordingly, the Court GRANTS Defendants' Motion as to Plaintiff's *Monell* claim.

## D.     State Law Claims

Plaintiff asserts state law Bane Act, assault and battery, and negligence claims.[6]

---

[6] Defendants also argue the Court should dismiss these claims because (1) Plaintiff's assault and battery and negligence claims are coextensive with his federal claims; (2) California Government

1.     1.   <u>Bane Act</u>

        a.   *Legal Standard*

California's Bane Act provides a private right of action against a person or persons who interfere by "threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state[.]" Cal. Civ. Code § 52.1(a). "There are two distinct elements for a section 52.1 cause of action. A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015), *review denied* (May 20, 2015). In other words, "[a] defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Shoyoye v. Cty. of L.A.*, 203 Cal. App. 4th 947, 956 (2012). Although the Bane Act was "initially enacted to stem a tide of hate crimes . . . a plaintiff need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Simmons v. Superior Court*, 7 Cal. App. 5th 1113, 1125 (2016) (internal quotation marks and citation omitted).

        b.   *Analysis*

"Civil Code section 52.1 . . . require[s] an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *City & Cty. of S.F. v. Ballard*, 136 Cal. App. 4th 381, 408 (2006) (internal quotation marks and brackets omitted). Defendants argue "there are

---

Code section 821.6 immunizes Defendants from Plaintiff's state law claims; and (3) Plaintiff did not timely present his negligence and Bane Act claims to the City as required by the Government Claims Act. They do not, however, explain under what rule they seek dismissal. Defendants' attempt to dismiss these claims at this stage is procedurally improper and should have been brought under a Rule 12(b) motion to dismiss or a Rule 12(f) motion to strike. Even if the Court were to construe Defendants' attempted dismissal as a Rule 12(f) motion, this would apply only to Defendants' argument that certain claims are redundant. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant . . . matter."). The Court therefore declines to consider Defendants' eleventh-hour request to dismiss these claims.

no allegations of 'threats, intimidation or coercion' that violate a separate constitutional right. Plaintiff attempts to collapse the two distinct elements of section 52.1 into a single claim: that [P]laintiff's right to be free from excessive force was interfered with by the officers' use of excessive force." Mot. at 22. Plaintiff conclusorily responds that "there is sufficient evidence for a jury to determine that [Peters and Bonnel] interfered with Mr. Lawrence's exercising of his constitutional rights by way of 'threats, intimidation, or coercion'—namely, the excessive force detailed herein." Opp'n at 22.

The parties fail to acknowledge, let alone address, the fact that there is no binding authority as to whether a Bane Act claim based solely on excessive force requires a threat or coercion independent from the constitutional violation. The parties further fail to address the split amongst courts that have considered this issue or to present any argument as to why the facts of this case compel the Court to follow one line of cases over the other.[7] *See Campbell v. Santa Cruz Cty.*, 2016 WL 6822081, at *11 (N.D. Cal. Nov. 18, 2016) ("[S]ome federal courts have ruled that allegations of excessive force are sufficient in and of themselves to allege a Bane Act claim, while others have said that the Bane Act requires coercion that goes beyond the allegations that give rise to the section 1983 claim."); *Hutton v. City of Berkeley Police Dep't*, 2014 WL 4674295, at *15 (N.D. Cal. Sept. 9, 2014) ("Courts in California are split on whether a Fourth Amendment excessive force or false arrest violation alone qualifies for the element of interference with a legal right under § 52.1." (internal quotation marks omitted)).

The California Court of Appeal has held that "[s]ection 52.1 requires of showing of

---

[7] Defendants argue Plaintiff
        fails to distinguish *Jones v. Kmart*, 17 Cal. 4th 329, 331 (1998), *City and County of San Francisco v. Ballard*, 136 Cal. App. 4th 381, 407 (2006), *Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1064 (E.D. Cal. 2009), *Rios v. City of Fresno*, No. CV–F–05–644 OWW/SMS, 2006 WL 3300452, *2 (E.D. Cal. Nov. 14, 2006), *Austin v. Escondido Union School District*, 149 Cal. App. 4th 860 (2007), or CACI jury instruction No. 3025. That alone should be dispositive of this issue.

Reply at 7-8. The same argument applies to Defendants: they do not distinguish the instant case from those that have held that a plaintiff is not required to make an independent showing of threats, intimidation, or coercion distinct from the excessive force to satisfy the Bane Act. *See infra.*

22

coercion independent of from the coercion inherent in a wrongful detention itself." *Shoyoye*, 203

Cal. App. 4th at 960. The *Shoyoye* plaintiff asserted a claim under the Bane Act based on his

unlawful detention, which was caused by a clerical mistake. *Id.* at 950-51. As the Bane Act "was

intended to address only egregious interferences with constitutional rights, not just any tort[,] [t]he

act of interference with a constitutional right must itself be deliberate or spiteful." *Id.* at 959.

Because the plaintiff was unlawfully detained on account of a mistake, the court held that he was

required to show coercion independent from that inherent in a wrongful detention. *Id.* at 960-61.

Post-*Shoyoye* appellate courts addressing the question of whether the Bane Act requires a

threat or coercion independent from the constitutional violation have done so in the context of an

unlawful detention, arrest, and/or search and seizure. *See, e.g.*, *Lyall v. City of L.A.*, 807 F.3d

1178 (9th Cir. 2015) ("Numerous California decisions make clear that a plaintiff in a search-and-

seizure case must allege threats or coercion beyond the coercion inherent in a detention or search

in order to recover under the Bane Act." (citing *Allen*, 234 Cal. App. 4th; *Quezada v. City of L.A.*,

222 Cal. App. 4th 993 (2014); *Shoyoye*, 203 Cal. App. 4th at 958-62)); *Bender v. Cty. of L.A.*, 217

Cal. App. 4th 968 (2013) ("Where . . . an arrest is unlawful *and* excessive force is applied in

making the arrest, there has been coercion 'independent from the coercion inherent in the

wrongful detention itself'. . . a violation of the Bane Act." (emphasis in original; quoting *Shoyoye*,

203 Cal. App. 4th at 959)).

But Plaintiff does not challenge the lawfulness of his arrest or allege there was an unlawful

search; he only disputes the amount of force used during his arrest. As the California Court of

Appeal recently noted, "we have not found[] a California case that addresses the precise question

presented here: whether a Bane Act claim arises from excessive force or an unlawful search

following a *lawful* arrest." *Simmons*, 7 Cal. App. 5th at 1126 (emphasis in original). Neither the

Ninth Circuit nor the California Supreme Court has resolved the question of whether a plaintiff

asserting a Bane Act claim based solely on excessive force must present evidence of threats,

intimidation, or coercion distinct from the excessive force claim.[8] In other words, courts have yet

---

[8] The *Bender* court noted that "we need not weigh in on the question whether the Bane Act
requires 'threats, intimidation or coercion' beyond the coercion inherent in every arrest, or

to determine whether the coercion that inherently exists in the use of excessive force during a lawful arrest satisfies the Bane Act.  The *Simmons* court acknowledged that "the majority of federal district courts in California have held that '[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force.'"[9] *Id.*, 7 Cal. App. 5th at 1126 (quoting *Dillman v. Tuolumne Cty.*, 2013 WL 1907379, at *21 (E.D. Cal., May 7, 2013); citing *Morse v. Cty. of Merced*, 2016 WL 3254034, at *12 (E.D. Cal., June 13, 2016); *Mann v. Cty. of San Diego*, 147 F. Supp.3d 1066, 1092 (S.D. Cal. 2015)).

The majority of courts in the Northern District of California have held "that allegations of excessive force are sufficient by themselves to allege a violation of the Bane Act."  *Barragan v. City of Eureka*, 2016 WL 4549130, at *8 (N.D. Cal. Sept. 1, 2016) (citing *Jones v. Cty. of Contra Costa*, 2016 WL 1569974, at *6 (N.D. Cal. Apr. 19, 2016); *Stubblefield v. City of Novato*, 2016 WL 192539, at *11 (N.D. Cal. Jan. 15, 2016)); *see I.A. v. City of Emeryville*, 2017 WL 952894, at *11 (N.D. Cal. Mar. 13, 2017); *Jones v. Cty. of Contra Costa*, 2016 WL 1569974, at *6 (N.D. Cal. Apr. 19, 2016) (where a "[p]laintiff alleges intentional conduct by the [d]efendants in the form of excessive force . . . , [the] [p]laintiff need not allege a showing of threats, intimidation or coercion independent from the coercion inherent in the use of force."); *Hutton*, 2014 WL 4674295, at *15. Other courts, however, have required the plaintiff to make a separate showing of threats,

---

whether, when an arrest is otherwise lawful, a Bane Act claim based on excessive force also requires violation of some right other than the plaintiff's Fourth Amendment rights."  217 Cal. App. 4th at 978.  The court further "emphasize[d] this [was] *not* a case involving the use of excessive force during an otherwise lawful arrest based on probable cause." *Id.* (emphasis in original).

[9] The *Simmons* court ultimately concluded it did "not [need to] determine whether a plaintiff can establish Bane Act liability without showing the challenged conduct is separate and independent from inherently coercive underlying conduct" because "[e]ven assuming the officers had probable cause to arrest [the plaintiff], the complained-of conduct asserted here—multiple nonconsensual, roadside, physical body cavity searches—is necessarily intentional conduct that is separate and independent from a lawful arrest for being in a park after it closed, for riding a bicycle in the dark without a headlight, or for resisting a peace officer."  7 Cal. App. 5th at 1127.

intimidation, or coercion. *See, e.g.*, *Han v. City of L.A.*, 2016 WL 2758241, at *9 (C.D. Cal. May 12, 2016) ("Plaintiff would need to present a theory of a Bane Act violation that went beyond the allegations of his § 1983 violations because the Bane Act requires additional coercion.").

Defendants cite *Justin v. City and County of San Francisco*, 2008 WL 1990819 (N.D. Cal. May 5, 2008), for the proposition that

> "[s]ection 52.1 is only applicable when a defendant intends by his or her conduct to interfere with a separate, affirmative right enjoyed by a plaintiff; it does not apply to a plaintiff's allegation of use of excessive force absent a showing that the act was done to interfere with a separate state or federal constitutional right."

Mot. at 21-22 (quoting *Justin*, 2008 WL 1990819, at *9). However, in deciding *Justin*, the Court did not have the benefit the recent California cases clarifying the requirements of the Bane Act, and case law interpreting and applying those cases to Bane Act claims based solely on excessive force. *See supra.* In light of these recent developments, the Court declines to follow its earlier position.

Instead, the Court now follows the holding of the majority of courts in the Northern District of California: a plaintiff asserting a Bane Act claim based on excessive force need not prove threats, intimidation, or coercion independent of the excessive force. "This makes sense because an excessive force claim by its nature includes coercion beyond that inherent, for example, in an arrest or detention or search and seizure." *Barragan*, 2016 WL 4549130, at *8.

Unlike the unintentional conduct at issue in *Shoyoye*, there are facts in the record that would allow a finder of fact to conclude Peters' use of excessive force was intentional. Plaintiff presents evidence from which a reasonable jury could find Peters intended to keep him in overly tight handcuffs, namely, his testimony that Peters did so even though he told her that the handcuffs were painful. *See* Pl.'s Lawrence Dep. at 115:14-15. In light of this testimony, the Court finds the overly tight handcuffing after being informed that the handcuffs were painful, in and of itself, establishes a threat, intimidation, or coercion as required by the Bane Act.

However, as explained above, there is no evidence that Bonnel violated Plaintiff's constitutional rights. Accordingly, there is no basis to state a Bane Act claim against Bonnel.

    c.   *Summary*

A reasonable jury could find Peters used excessive force against Plaintiff: the excessive force at issue in this case satisfies the Bane Act requirement that there be "threat, intimidation, or coercion." The Court therefore DENIES summary judgment as to Peters on this claim. There is, however, nothing in the record to support Plaintiff's allegation that Bonnel violated his constitutional rights. Accordingly, the Court GRANTS summary judgment in favor of Bonnel on the Bane Act claim.

    4**.**   <u>Assault and Battery</u>

To prove assault, a plaintiff must show "(1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *So v. Shin*, 212 Cal. App. 4th 652, 668–69 (2013), *as modified on denial of reh'g* (Jan. 28, 2013). The elements for battery are "(1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." *Id.* at 669.

California Penal Code section 835 provides that a "person arrested may be subjected to such restraint as is reasonable for his arrest and detention." Thus, "[a]ny peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance." Cal. Pen. Code § 835a. But as explained above, there is a genuine dispute as to whether Peters, but not Bonnel, used unreasonable force against Plaintiff. The Court therefore GRANTS summary judgment in favor of Bonnel and DENIES the Motion as to Peters on the assault and battery claims.

    5.   <u>Negligence</u>

"In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349

F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557 (1990)).

Defendants argue Plaintiff cannot show Defendants breached a duty to him. Mot. at 19. But "[u]nder California law, police officers have a duty not to use excessive force." *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1251 (N.D. Cal. 2015) (internal quotation marks omitted).

Because there is no evidence that Bonnel used excessive force, the Court GRANTS the Motion as to him on Plaintiff's negligence claim. However, as there is a triable issue as to whether Peters used excessive force, this suffices to also create a genuine dispute as whether the Peters breached her duty of care owed to Plaintiff. *See Young v. Cty. of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011) ("Because the Fourth Amendment violation . . . also suffices to establish the breach of a duty of care under California law, we reverse the district court's dismissal of [the plaintiff's] state law negligence claim, as well."). As the Court DENIES Defendants' Motion with regard to Peters as to Plaintiff's negligence claim.

## CONCLUSION

Based on the analysis above, the Court ORDERS the following:

> (1)     Defendants' Motion is GRANTED on Plaintiff's *Monell* claim.
>
> (2)     Defendants' Motion is GRANTED as to Bonnel on all claims.
>
> (3)     Defendants' Motion is DENIED as to Peters on Plaintiff's § 1983, Bane Act, assault and battery, and negligence claims.

In addition, the Court ORDERS the parties to attend a further settlement conference with the Honorable Jacqueline Scott Corley. Accordingly, the Court VACATES all trial and trial-related dates pending the outcome of the settlement conference.

The Court will issue a separate judgment in accordance with Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

Dated: June 15, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge