UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL LAWRENCE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-00820-TSH<br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT**<br><br>Re: Dkt. No. 153 |

## I.　INTRODUCTION

After several rounds of settlement negotiations, the parties in this case appeared to have reached a settlement on November 30, 2018. However, Plaintiff Emil Lawrence subsequently filed a notice of non-settlement and requested the Court schedule the matter for trial. Defendants City and County of San Francisco (the "City") and San Francisco Police Officer Christa Peters responded with the present Motion to Enforce Settlement. ECF No. 153. Mr. Lawrence filed an Opposition (ECF No. 154), Defendants filed a Reply (ECF No. 155), and the Court held an evidentiary hearing on March 28, 2019. For the reasons stated below, the Court finds that a settlement agreement was reached in this matter and therefore **GRANTS** Defendants' motion.

## II.　BACKGROUND

### A.　Factual Background[1]

This case stems from a San Francisco Police Department ("SFPD") incident report non-party Karen Waksman filed in 2011, alleging her iPad had been stolen from a restaurant in San Francisco, California. The incident report identifies Mr. Lawrence as the person suspected of

---

[1] The following facts are taken from the summary judgment order entered in this case on June 15, 2017 by Magistrate Judge Maria-Elena James. Order re: Mot. for Summ. J. at 1-6, ECF No. 126. This case was reassigned to the undersigned upon Judge James's retirement. ECF No. 144.

taking her iPad. On January 2, 2012, Waksman called 911 to report that the person who stole her iPad had returned to the restaurant. *Id.* at 2. Peters and SFPD Officer Joshua Enea responded to the call. *Id.* After an employee identified Mr. Lawrence as the person who had stolen Waksman's iPad, Peters and Enea approached Mr. Lawrence to speak with him, explaining that he was not under arrest, but that the officers were detaining him pending an investigation. The officers handcuffed Mr. Lawrence and placed him in a patrol car. While Mr. Lawrence was in the patrol car, Enea reviewed video footage of the alleged theft, then returned outside to inform Peters that Mr. Lawrence was the individual in the footage and directing her to take him to SFPD's Northern Station.

At Northern Station, Mr. Lawrence either refused to or could not exit the vehicle, at which point Peters radioed for another officer to help her remove him. Peters flagged down SFPD Officer Daniel Bonnel, who removed Mr. Lawrence from the vehicle. Mr. Lawrence alleges Bonnel dropped him from one-and-a-half to three feet, but Bonnel denies dropping him. Peters and Bonnel walked Mr. Lawrence into the station, at which time they sat him on a bench and secured him to it. Mr. Lawrence declined medical assistance. Enea returned to Northern Station and gave Mr. Lawrence a Notice to Appear. Mr. Lawrence signed the notice and was released thereafter.

**B.      Procedural Background**

On July 22, 2013, Mr. Lawrence initiated this action against the City and SFPD in the Superior Court of California. ECF No. 1, Ex. A (Compl.). The City removed the action to this Court on February 24, 2014, Notice of Removal, ECF No. 1, after which the parties were referred to Magistrate Judge Jacqueline Scott Corley for a settlement conference. ECF Nos. 19, 20. Judge Corley conducted settlement conferences on August 18, 2014 and July 28, 2015, but the parties were unable to settle. ECF Nos. 22, 53.

After the second conference, Judge James referred the case to the Federal Pro Bono Project to attempt to find an attorney to represent Mr. Lawrence pro bono. ECF No. 54. On July 31, 2015, Judge James appointed Coblentz Patch Duffy & Bass LLP to represent Mr. Lawrence for all purposes for the duration of the case. ECF No. 55. Mr. Lawrence subsequently requested leave to

2

amend his complaint, which Judge James granted on October 7, 2016. ECF Nos. 79, 89. On October 13, 2016, Mr. Lawrence filed the operative Second Amended Complaint against the City and Officers Peters and Bonnel, asserting the following claims: (1) excessive force under 42 U.S.C. § 1983 and California Civil Code section 52.1; (2) assault and battery; and (3) negligence. ECF No. 91.

On February 16, 2017, Defendants moved for summary judgment on all claims. ECF No. 99. Judge James granted summary judgment as to Mr. Lawrence's claims against the City and Bonnel but denied summary judgment as to Peters. ECF No. 126. That same day, Judge James entered judgment in favor of the City and Bonnel. ECF No. 127. As Judge James did not address whether the City was vicariously liable for the surviving state law claims against Peters, on subsequent reconsideration, she reversed the judgment in favor of the City as it relates to vicarious liability. ECF No. 139. Thus, the City and Peters are the sole remaining defendants in this case.

On August 2, 2018, Judge James referred the remaining parties to Judge Corley for a further settlement conference. ECF No. 141. On November 28, 2018, the parties participated in a settlement conference with Judge Corley, at which time Defendants agreed to leave their final settlement offer open until November 30, 2018. ECF No. 146; Ceballo Decl. ¶ 2, ECF No. 153-1.

On November 30, 2018, Mr. Lawrence's counsel Mark Hejinian telephoned Defendants' counsel Brian Ceballo. Ceballo Decl. ¶ 3; Hejinian Decl. ¶ 3. According to Defendants, Mr. Hejinian called to accept Defendants' settlement offer in full. Ceballo Decl. ¶ 3. Mr. Ceballo attests that he and Mr. Hejinian "discussed and agreed on the material terms of the agreement, including the release and waiver of all claims against each defendant, and that the settlement required execution of written documents and necessary approvals." *Id.* Mr. Ceballo further attests that Mr. Hejinian "understood and acknowledged that the declarant would begin the process of reducing the agreed upon terms of the settlement to writing." *Id.* According to Mr. Hejinian, he conveyed only that Mr. Lawrence agreed to Defendants' "settlement number," and that he "instructed Mr. Ceballo to prepare the 'required' settlement documents for [his] review." Hejinian Decl. ¶ 3, ECF No. 154-1. Mr. Hejinian maintains that there was no agreement during the call on any material term other than the settlement amount. *Id.* ¶ 4.

3

Later that afternoon, Mr. Hejinian emailed Mr. Ceballo, stating: "This confirms our call. Mr. Lawrence is accepting the defendants' settlement offer of $[redacted] and you will begin preparing the required documents. I'll inform Judge Corley." Ceballo Decl., Ex. A. The parties subsequently informed Judge Corley that they had reached a settlement. ECF No. 147. On December 4, 2018, the Court issued a Standby Order of Dismissal, directing the parties to file a stipulation for dismissal by January 31, 2019. ECF No. 148.

On December 10, 2018, Mr. Ceballo prepared "a privileged and confidential document, required for settlement, to the San Francisco Police Department." Ceballo Decl. ¶ 5. However, on December 18, 2018, Mr. Hejinian emailed Mr. Ceballo to inform him that "Mr. Lawrence has decided not to settle the matter after all, and therefore there is no reason for you to draft a settlement agreement." *Id.*, Ex. B. On December 21, 2018, Mr. Lawrence filed a Notice of Non-Settlement and Request for Trial Setting, indicating that although Defendants "contend that the parties entered into a settlement," he had only "indicated that he would accept a financial settlement proposed by Defendants subject to the execution of a written settlement agreement," but he "elected not to settle the matter" prior to the parties discussing any specific terms of the settlement agreement." ECF No. 149.

On February 14, 2019, Defendants filed the present motion, arguing the parties entered into a completed settlement agreement and that Mr. Lawrence "may have changed his mind, but it is not a legitimate basis to attempt to invalidate the settlement agreement." Mot. at 4. In response, Mr. Lawrence maintains that "[d]espite the efforts of Magistrate Judge Corley at the parties' third settlement conference, there was no settlement to be had." Opp'n at 2. He admits he agreed in principle to the settlement amount, but argues the parties had no agreement on many material terms, including the scope and form of any releases, the timing for payment, and confidentiality. *Id.*

On March 28, 2019, the Court held an evidentiary hearing at which Mr. Ceballo and Mr. Hejinian testified.[2] Mr. Ceballo testified that the only material terms of the settlement agreement

---

[2] Although Mr. Ceballo and Mr. Hejinian did not take the witness stand to testify, they stipulated that the Court could consider their proffers during oral argument at the hearing as sworn

4

1 were that Mr. Lawrence would accept a monetary settlement in exchange for dismissal of all
2 claims against Defendants. He further testified that Mr. Hejinian called on November 30 to accept
3 the "settlement offer," not just a monetary amount. Mr. Hejinian testified that the only terms the
4 parties discussed were a monetary settlement in exchange for dismissal of all claims. He further
5 testified that his client could not have entered into a full settlement agreement because material
6 terms had not been disclosed, such as any type of confidentiality agreement.

### III. LEGAL STANDARD

A district court retains the inherent power to summarily enforce settlement agreements entered into by the parties in cases pending before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 956, 957 (9th Cir. 1994). The party seeking enforcement bears the burden of demonstrating that the parties entered into an enforceable agreement. *In re Andreyev*, 313 B.R. 302, 305 (B.A.P. 9th Cir. 2004); *Lee v. Retail Store Employee Bldg. Corp.*, 2018 WL 385207, at *4 (N.D. Cal. Jan. 10, 2018), *appeal dismissed*, 2018 WL 3825472 (9th Cir. July 20, 2018) (citation omitted).

"Assessing the validity of a settlement agreement . . . is a question of state contract law." *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1087 (9th Cir. 2015) (citing *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) ("Typically, the construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." (quotation marks omitted)). Under California law, a valid contract requires parties capable of contracting, consent, a lawful object, and consideration. Cal. Civ. Code § 1550; *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004). "[U]nless a writing is required by the statute of frauds, oral settlement agreements are enforceable in the same manner as oral agreements in general." *Nicholson v. Barab*, 233 Cal. App. 3d 1671, 1681 (1991); *see id.* at 1682 (listing California cases in which out-of-court oral settlement agreements were found to be enforceable). Here, California's statute of frauds, California Civil Code section 1624, is not applicable because the alleged oral agreement is not one of the seven types of contracts listed in section 1624 as "invalid" without a writing.

---

testimony. Neither side raised evidentiary objections to any testimony presented.

5

The Ninth Circuit has cautioned that district courts "may enforce only complete settlement agreements." *Callie v. Near*, 829 F.3d 888, 890 (9th Cir. 1987). "A complete agreement is "one where the parties have manifested their mutual assent to all the material terms." *Lee*, 2018 WL 385207, at *4 (citation and quotations omitted). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890 (citations omitted).

## IV. DISCUSSION

Based on the parties' submissions and oral testimony at the March 28, 2019 evidentiary hearing, the Court finds the parties entered into an enforceable settlement agreement on November 30, 2018.

### A. Parties Capable of Contracting

First, pursuant to California Civil Code section 1556, all persons are capable of contracting "except minors, persons of unsound mind, and persons deprived of civil rights." None of these exceptions applies here, and neither party contests that this requirement has been met.

### B. Mutual Consent

Second, under an objective analysis, the Court finds the parties mutually agreed to settle this case. *See Lopez*, 118 Cal. App. 4th at 1230 ("An essential element of any contract is the consent of the parties, or mutual assent."). The existence of mutual consent is determined by objective criteria; the "parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.'" *Weddington Prod., Inc., v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (quoting Cal. Civ. Code § 1580).

At the conclusion of the November 28 conference, Mr. Ceballo "agreed to leave Defendants' final settlement offer open until November 30, 2018." Ceballo Decl. ¶ 2. There is no indication that this final offer referred only to a "settlement amount" as Mr. Lawrence contends. In his testimony at the March 28 evidentiary hearing, Mr. Ceballo confirmed that the settlement offer consisted of a settlement amount in exchange for dismissal of all claims against Defendants. The Court finds this testimony credible. Further, the material terms of the settlement agreement reached by the parties are straightforward: Mr. Lawrence would dismiss all claims against each

6

defendant in exchange for a settlement amount. *Id.* ¶ 3. The Court finds the communications between the parties on November 30, coupled with their subsequent confirmation to Judge Corley that the case settled, indicate they agreed that the entire case would be dismissed in exchange for Defendants paying Mr. Lawrence a sum certain. *See Sangerman v. Theriault Enters. Inc.*, 2007 WL 707502, at *3 (N.D. Cal. Mar. 6, 2007) (enforcing oral settlement agreement where "the communications between the parties indicate that defendants and plaintiffs agreed that the entire case would be settled in exchange for defendants paying plaintiffs $65,000."). Mr. Lawrence "may no longer like the terms of the settlement, but he agreed to those terms . . . and [D]efendants have the right to enforce them." *McCovey v. Pac. Lumber Co.*, 1992 WL 228888, *4 (N.D. Cal. May 29, 1992). Thus, both parties exhibited sufficient "outward manifestations" of an intent to be bound by an oral settlement agreement.

Mr. Lawrence argues the settlement "was not complete" because it required the execution of written documents and necessary approvals. Opp'n at 5. "Whether the parties *intended* only to be bound upon the execution of a written signed agreement is a factual issue." *Callie*, 829 F.2d at 890-91 (emphasis in original, citations omitted). An oral settlement agreement is binding where the objective intent of the parties, "not the parties' subjective intent," was to make the agreement binding. *Elyaoudayan v. Hoffman*, 104 Cal. App. 4th 1421, 1430 (2003); *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) ("The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties.") (citations omitted). As discussed above, the record confirms the parties' objective intent to be bound by the settlement agreement. The fact that the parties' agreement was never put on the record or reduced to writing does not mean an agreement is unenforceable. *See Lee*, 2018 WL 385207, at *6 (oral agreement enforceable, despite lack of written terms, where plaintiff exhibited "outward manifestations" of an intent to be bound); *Sangerman*, 2007 WL 707502, at *3 ("[T]he fact that defendants have not signed the written settlement agreement does not bar enforcement of the orally agreed-upon terms contained in the contract."); *Bryant v. Amtrak*, 2011 WL 291233, at *3 (S.D. Cal. Jan. 26, 2011) (enforcing settlement agreement despite that it called for a "long form agreement" to be prepared); *Blix Street*

7

*Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48 (2010) (when parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement); *Banner Entm't, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 358 (1998) ("[I]f the respective parties orally agreed upon all of the terms and conditions of a proposed written agreement with the mutual intention that the oral agreement should thereupon become binding, the mere fact that a formal written agreement to the same effect has not yet been signed does not alter the binding validity of the oral agreement."). Mr. Lawrence's subjective intent is irrelevant.

Finally, although it was Mr. Hejinian and not Mr. Lawrence who called Mr. Ceballo to accept the offer and subsequently contacted Judge Corley to confirm the parties had settled, settlement agreements can be enforced when a plaintiff authorizes his counsel to settle the dispute. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143 1144-45 (9th Cir. 1977); *McCovey*, 1992 WL 228888, at *4 (where parties orally agreed to settle case for $5,000 and plaintiff later claimed he did not authorize his attorney to settle the case for less than $50,000, court upheld oral agreement because "[a]lthough plaintiff now claims that he only authorized [his attorney] to settle the case for $50,000 or more, there is no dispute that [his attorney] was authorized to enter into some kind of settlement negotiations."). Here, Mr. Lawrence provides no specific details or factual support, such as statements, emails, or other evidence, to show that he did not authorize his counsel to accept the settlement on his behalf. Further, Mr. Lawrence does not dispute that his counsel called Mr. Ceballo on his behalf to convey that he agreed to the settlement. Hejinian Decl. ¶ 3.

Mr. Lawrence also argues that he "was entitled to rethink his options and decline to settle his case." Opp'n at 2. However, the fact that Mr. Lawrence later changed his mind does not mean he is no longer bound by the parties' agreement. *See Lee*, 2018 WL 385207, at *5-6 (determining, after evidentiary hearing, that parties intended to be bound by an oral settlement agreement, despite plaintiff testifying that he changed his mind about dismissing the case "after he got home" because he "fe[lt] that it [settling] is not beneficial for me."). Accordingly, the Court finds there was mutual assent to the settlement agreement.

### C. Lawful Object

Third, the object of the settlement is lawful as it requires Defendants to make a settlement payment in exchange for Mr. Lawrence's release of his claims against them. *See Madani v. Cty. of Santa Clara*, 2019 WL 402362, at *7 (N.D. Cal. Jan. 31, 2019) (settlement payment in exchange for release of claims is a lawful object of settlement agreement).

### D. Consideration

Finally, the settlement is supported by consideration. Consideration is satisfied when a party (1) confers or agrees to confer a benefit on a party not entitled to that benefit, or (2) suffers or agrees to suffer a prejudice that a party is not legally bound to suffer. Cal. Civ. Code § 1605; *see* 1 Witkin, Summary 11th Contracts § 202 (2018) ("Consideration may be an act, forbearance, change in legal relations, or a promise."). Here, the settlement required Defendants to pay Mr. Lawrence a settlement payment, and in exchange, Mr. Lawrence would dismiss his claims against them. Therefore, the settlement is supported by consideration. *Madani*, 2019 WL 402362, at *8 (settlement supported by consideration where it required settlement payment in exchange for dismissal of lawsuit).

## V. CONCLUSION

For the reasons stated above, the Court finds the parties entered into an enforceable settlement agreement. Accordingly, the Court **GRANTS** Defendants' motion to enforce. Defendants are **ORDERED** to carry out the terms of that settlement. Pursuant to the oral settlement agreement, the Court **ORDERS** that this action be dismissed with prejudice. The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: March 28, 2019

THOMAS S. HIXSON
United States Magistrate Judge